702                    CAMPBELL *v.* WYANT.                [Sup. Ct.

## CHARLESTOWN.

·CAMPBELL *v.* WYANT *et al.*

Submitted June 24, 1885.—Decided October 2, 1885.

1. Where a sheriff levies on sufficient personal property to pay the taxes on land, for which the levy was made, and the property is lost through his neglect or misconduct, for which the owner of the land is in no way responsible, the taxes so levied for are paid ; and when after such levy and loss the land was returned delinquent and sold, and a deed made therefor, a court of equity will cancel such deed. (p. 708.)

2. *Quære.*—Is that part of sec. 25 of ch. 117, Acts 1872–3 constitutional, which declares : "No irregularity or over-charge as to a part of such taxes or purchase-money, nor payment of a part of such taxes, shall invalidate the sale except as to a part of the real estate so sold, proportioned to the whole thereof, as such part of the taxes or purchase-money is to the whole thereof ?" (p. 708.)

The facts of the case are sufficiently stated in the opinion of the Court.

*Leonard & Caldwell* for appellant.

No appearance for appellee.

JOHNSON,. PRESIDENT:

In 1877 the plaintiff filed his bill in the circuit court of Calhoun county to set aside a tax-deed. The bill alleges, that the plaintiff.was the owner in fee of 535 acres of land in Lee district, Calhoun county; that the said land was assessed as 590 acres and was returned delinquent for the taxes of 1874 ; and that it was on November 22, 1875, by the sheriff of Calhoun county sold for said taxes. The bill charges, that said sale and deed are void for the following reasons, which appear of record in the clerk's office of the county court of Calhoun county : that said tract of land was improperly assessed on the land-books, being assessed as a tract of 590 acres, when it should have been assessed as a tract of 535; that the sheriff of Calhoun county did not return a proper list to the county court of said county of Calhoun for the year 1874;

that the distance and bearing of said land from the court-house was not given as required by law. A certified copy of the return of the land is exhibited, in which the "distance and bearing from court-house" is blank. The plaintiff further charges that said tract of land was never legally returned delinquent for the non-payment of the taxes due thereon for the year 1874; that no list was posted at the front door of the court-house of said county for the time required by law before the June term 1875 of the county court of said county; that there was a large amount of personal property, out of which the sheriff of said county could and ought to have made the taxes for the year 1874, and that said sheriff had levied on the said personal property, and received out of said property all of said taxes, and that the said sheriff fraudulently and falsely returned said tract of land delinquent for the non-payment of the said taxes.

He further claims that the said sheriff did not within ten days after receiving the list of lands set the same up at the front door of the court-house of the said county with the notice required by statute appended thereto; nor were the notices required by law posted at other places.

He further charges, that the sheriff did not within ten days after the completion of such sale return to the clerk's office a list of such sales with certificate and oath attached thereto, and that said clerk did not within twenty days thereafter make an accurate copy thereof in a book, and transmit the original to the Auditor. He prays said deed may be cancelled, and for general relief.

The plaintiff afterwards filed an amended bill, in which he alleges that in 1873 he conveyed said land to Ann B. Campbell, but it was not transferred to her on the assessor's books but still remained in his name, and that after this said tax-deed was obtained, and before this suit was brought, she conveyed said land back to him; that the value of said land is $2,600.00; that the farm was rented to David Carpenter for the year 1874; that there were at least fifty bushels of rent-corn on said farm for the year 1874, and that it was worth seventy-five cents per bushel; that the taxes on said land for for 1874 amounted to about $23.00, and that the sheriff of said county levied the said taxes on said rent-corn, which had been

raised and cropped on said land, and in that way collected the tax for the year 1874; that the return of said land was fraudulent, &c. He charges, that the defendant and others combined to purchase said land at said tax-sale, and agreed that they would not bid against each other, and then would divide the land among themselves. He charges that there was more than sufficient personal property on the land to pay the taxes, and that by the said levy they were paid. He repeats the prayer of the original bill.

The defendant, Wyant, answers both the original and amended bills, and specifically denies every allegation and charge, which tends to show, that there were any omissions or irregularities in the said sale for taxes, which can under the law be sufficient to set aside his deed.

Rufus Knotts, the deputy-sheriff of Calhoun county, in his deposition in the cause admits, that he had the tax-ticket for the year 1874 against said land in his possession for collection, and that in the fall of 1874 he levied the same on a crib of rent-corn on said land. With respect to that he says : "I was deputy-sheriff for James Barr, sheriff of Calhoun county, and acted as such from January, 1873, until June, 1875. I had a tax-bill for the year 1874 against William C. Campbell upon the land referred to. I collected $5.25 on said taxes, and the residue was not collected, and was returned delinquent; I did not make any effort to collect said taxes. I was on the land, I think, in December, 1874. I found a small crib of corn which I levied, and left in the care of David Carpenter, and before I had time to advertise and sell the corn, I saw Mr. Stump, who lived in the neighborhood, and spoke of wanting to buy corn, and that he had been talking to John C. Campbell in reference to the corn that was on the place. I told him that any arragement that him and Camp-. bell would make in reference to the corn, so that the proceeds would be applied on the taxes at seventy-five cents a bushel would be satisfactory. I saw Mr. Stump after that. He told me that he saw Mr. Campbell and got some of that corn and would get some more. The next time, I think, that I saw him, he told me that he got to the amount of $5.25. He accounted to me for that amount which I applied on the taxes; the residue of the corn, if any, I do not know what became of it, David

Carpenter having removed from the place; no other property that I know of is liable for the taxes." (Objection was made to conversations with Stump.) He further stated: "The corn I considered very indifferent, it being damaged. I would suppose there were about thirty bushels of ears. I would not suppose it to be worth more than $8.00 to $10.00."

Knotts was recalled, and informed that "David Carpenter a witness for plaintiff in this case in answer to a question propounded to him in relation to a conversation had with you says: 'My understanding was with Mr. Knotts, when he came back he —— to me to let Mr. Stump have the corn. He was to take the corn and settle the tax. I told him I would not have anything to do with the corn. When he came back he told me that he had let Mr. Stump have the corn, and he was to settle the tax.' Now please state how this is, and what you did say on that occasion touching this matter, as near as you can recollect." Answer. "My arrangement with Mr. Stump was to see Mr. Campbell and with his permission were to get of the corn and account to me on the taxes of the land for the amount of corn he should get. My recollection is, I told Mr. Carpenter the arrangements I made with Stump in reference to the corn. I can not remember the exact language used." He denies, that he told Carpenter, that he had let Stump have the corn, and that Stump was to settle the taxes. Says that it is his recollection, that he was at the end of the crib of corn when levied on.

His deposition was re-taken. In this he says, that Stump accounted to him for the $5.25 in March or April, 1875, that he made no arrangement with any other person than Stump to get corn from the crib, and did not know that any person was getting corn there by arrangement with any other person whatever.

David Carpenter in his deposition says: "In the fall of 1874 the sheriff came and wanted the taxes for that year, and asked if Mr. Campbell had left the money with me to pay the taxes. I told him he had not. The sheriff said he must have his money for the taxes. I told him there was Mr. Campbell's corn, which was gathered and in the crib, and the raft of logs. The sheriff went down the creek and when he came back he said he would let Mr. Stump have the

corn to settle the tax. Mr. Stump came and got corn. I had nothing to do with it. My property on the land was worth at least $250.00. The raft was there yet when I left. There were upwards of fitty bushels of Mr. Campbell's corn.

He further said that Bushrod Hopkins come to his house in the fall of 1874 and told him he had an order from Mr. John C. Campbell for corn, he did not show witness the order. He told Hopkins that he had delivered the rent-corn to Mr. John C. Campbell and that he would have nothing more to do with it. He said further on cross-examination, he had. raised on that farm in 1874, he supposed 300 bushels of ears of corn, and one third of it was rent-corn. When the levy was made, Campbell's rent-corn was all in the crib.

Stump in his deposition says: "I understood that Mr. Knotts had levied on corn on the land for the taxes of 1874, and I wanted to get some of the corn, so I went to Mr. Knotts and asked him if he had levied on the corn, and he told me that he had, and I asked him if I could get some of the corn, and I would pay him for it on the said taxes, and he told me I could," and I got corn to the amount of $5.25, at the rate of seventy-five cents per bushel, and I paid Mr. Knotts the $5.25 on the taxes on said land for the year 1874. I paid him on April 16, 1875; there were about thirty-five or fifty bushels of ears of corn left there after I got the corn.

John C. Campbell said in his deposition : "I had learned that the sheriff of Calhoun county had levied the said taxes on corn that was on the land, and which I knew was more than enough to pay said taxes, and I further learned from George G. Stump that the sheriff was disposing of said corn, and in answer to his inquiry I told him it was all right for him to purchase the corn of the sheriff, and to pay him for it to pay the taxes, and so I had reason to believe and did believe that the sheriff had collected said taxes." This witness says he is the husband of Ann B. Campbell and was her agent to look after the land in 1874.

Bushrod W. Hopkins in his deposition says: "I know there was corn there then, I purchased fifteen bushels of it from John C. Campbell. I found the corn in a crib close to David Carpenter's house. Had an order for the corn from

John C. Campbell. I had no trouble in getting the corn. Carpenter raised some objection, I can't state positively what my recollection is Carpenter said it was levied on, or he was notified by the sheriff not to let the corn go. Can't say whether Carpenter said he was notified not to let the corn go, or not to sell it; I think I took the corn away in December, 1874, or January, 1875. Had no conversation with Campbell about the ownership of the corn.

Seymour Rese in his deposition says, he got corn there twice, two bushels of ears each time. "David Carpenter measured the same, and I paid him for it.    *    I never had any conversation with John C. Campbell about the corn, and never paid for any."

The cause having been transferred to the circuit court of Lewis county by that court July 9, 1881, was heard on the pleadings, the original and amended bills, answers of defendant Wyant, and general replications thereto, exhibits, depositions of witnesses, &c., and the court was of opinion that so far as the plaintiff seeks relief by the total revocation of the deed of Stump, clerk, to defendant Wyant, the right upon the pleadings and proof is for Wyant. The court ascertains, that the whole tax on said tract of land for the year 1874 was $22.42, and that there was paid thereon before the land was returned delinquent $5.25; and the court was of opinion, that the payment of said $5.25 does invalidate the sale of the said tract of land, so sold to said Wyant, proportioned to the whole thereof as the said sum of $5.25 is to $22.42, and directed said Wyant to "convey by proper deed an undivided interest in said tract of land, as may have accrued to him by the deed of said clerk, equivalent to an undivided interest of 138 2-10 acres in the tract, as a tract of 590 acres," &c., and that Wyant pay the costs. Beyond this, relief was decreed the plaintiff.

From this decree W. C. Campbell appealed.

The right to sell land for taxes on an *ex parte* proceeding is an exception to the general rule : that no man shall be deprived of property without due process of law, and that due process of law is only upon a hearing of the parties in a court of competent jurisdiction. A grave constitutional question is therefore presented, whether a person's land shall be

sold for taxes not due thereon. Sec. 25 of ch. 117 of the Acts of 1872–3 authorized the action of the court in refusing to set aside the sale *in toto*, when it was ascertained by the court, that the land was sold for a greater amount of taxes than were due thereon. The provision is : "No irregularity or *overcharge* as to a part of such taxes or purchase-money, nor payment of a part of such taxes, shall invalidate the sale, except as to a part of the real estate so sold proportioned to the whole thereof, as such part of the taxes or purchase-money is to the whole thereof." Is this provision constitutional? Can a citizen be deprived of his property in this way? Can there be any valid sale of a person's land under such circumstances? Can the court make a contract for him, and say he shall only have a part thereof, and so the owner be deprived of what was improperly sold? As it is not necessary to the decision of this cause, that this constitutional question should be decided, we decline to consider it.

I think it is clearly proved in this record, that the sheriff of Calhoun county through his deputy, Rufus Knotts, levied on sufficient personal property on the premises to pay the taxes on the land for 1874, and that such levy was never released, and that therefore the taxes on said land for 1874 were paid. By statute the taxes may be levied on personal property, the same as executions may be levied, and of course the same rule as to such levy and the effect thereof must apply in the one case as in the other. Freeman in his excellent work on Executions sec. 269 says: "Levy upon personal property sufficient in value to satisfy the execution is frequently said to operate *per se* as an extinguishment and consequently as a satisfaction of the execution. In regard to the effect of such a levy there is no substantial conflict of opinion, though the judges have differed somewhat from one another in describing this effect and the means by which it is produced. None of the decisions assume that a levy produces any absolute satisfaction. It is a satisfaction *sub modo;* the levy must be fairly exhausted, before further proceedings can be taken, and while these proceedings are going on, the plaintiff can not have another execution, nor sue on the judgment, nor redeem lands under it. After the levy, if the sheriff wastes the property, or it is lost or destroyed

through his neglect or misconduct or that of the plaintiff, the satisfaction is absolute. If without any fault of the sheriff the levy does not produce proceeds sufficient to satisfy the execution, then the plaintiff is entitled to proceed for so much as remains unpaid, as if no levy had been made. * * Where (however) the property is never taken from the presence of the defendant, or where after being so taken it is restored to him at his request, or by some act for which he is responsible, or in which he acquiesces, the levy does not · operate as a satisfaction, so far at least as his rights are concerned." These propositions are sustained by abundant authority cited by Freeman.

Here there is no proof, that the plaintiff, William C. Campbell or Ann B. Campbell made any arrangement with the sheriff, by which the corn was to be released from the levy, nor did they or either of them get the benefit of said property, but it was except as to the $5.25 wholly lost to them, and according to the authorities we have cited the property being shown to have been of sufficient value to pay the taxes, the said taxes were paid, and the land was improperly returned delinquent. There was much evidence taken to show there was abundant personal property on said land in possession of the tenant to have paid the taxes. The proof is ample to show, that the personal property in the hands of the tenant was sufficient to have many times over paid said taxes, and that said property was there when the levy was made on the crib of corn. But although it is denied in the answer, that such property was there, and that was made an issue in the cause, yet it was an immaterial issue, because a tax-deed will not in our State be set aside, because there was personal property on the land liable for the taxes, which was not, when it ought to have been, taken by the sheriff to pay the same. The taxes must be actually paid by the owner of the land or some other person or else by distress under chapter 30 of the Code; or they may be paid by the appropriation of sufficient personal property, for the loss of which the sheriff is chargeable, as we have seen. In some states land can not be returned delinquent and sold, if there be sufficient personal property on the land to pay the taxes, that is, by force of their statutes. (Blackwell on Tax Titles, chapter IX.) Our statute is different.

For the error we have pointed out the decree of the circuit court of Lewis county is reversed with costs to the appellant against the appellee Wm. T. Wyant; and the said tax-deed is cancelled and annulled, and a writ of possession awarded the plaintiff, and the plaintiff must recover his costs against said Wm. T. Wyant in the circuit court expended.

REVERSED.