# WHEELING.

KNIGHT AND MARTIN v. CHARTER et als.

Submitted June 15, 1883—Decided November 10, 1883

1. Sureties seeking to be relieved in equity from the obligation of their contract, are not entitled to be absolved from such liability by the want of diligence on the part of the creditor in prosecuting his demand against the principal debtor. (p. 427.)

2. A creditor is not bound to active diligence, in prosecuting his demand, and if he remains merely *passive*, his rights against the surety are not thereby impaired. (p. 427.)

3. If a creditor has obtained judgment against the principal debtor, sued out execution thereon, and placed the same in the hands of the proper officer to be executed, and before the return day thereof, *and before the same was levied*, he directs such officer not to levy the execution, and to return the same without being levied, and the same is accordingly so returned, such indulgence does not release the sureties of such judgment-debtor. (p. 427.)

4. A mere countermand of an execution by the creditor, after it goes into the hands of the sheriff, *but before it is levied*, does not release the surety of the execution-debtor.

5. Unless the creditor *without the consent* of the surety make a valid and binding contract for a good consideration to give indulgence to the principal debtor, so as to tie up his hands from proceeding to enforce his demand against said principal debtor, at *any moment*, he may be required by the surety to do so, such indulgence will not release the surety from the obligation of his contract.   (p. 429.)

6. In a bill filed by sureties seeking to be relieved from the obligation of their contract on the ground that such indulgence has been given to the principal debtor by the creditor, it must show on its face the existence of every fact necessary to entitle them to such relief; and if it fail to show these facts, and *also that such indulgence was granted without or against their consent*, the bill is fatally defective, and a demurrer thereto ought to be sustained.

7. A case finally heard upon its merits in the court below, upon a bill fatally defective—dismissed in the Court of Appeals, because the plaintiffs wholly failed to show themselves entitled to any part of the relief prayed for.   (p. 433.)

WOODS, JUDGE, furnishes the following statement of the case :

T. K. Knight and Luther Martin filed their bill in the circuit court of Doddridge county against L. R. Charter, George H. Towles, J. Emory Towles, and the sheriff of said county, alleging that plaintiffs were the sureties of George H. and J. E. Towles in a note for two hundred dollars made to Charter for money lent by him to them; that soon after the note became due, George H. and J. E. Towles confessed judgment in the clerk's office of the circuit court of said county for two hundred dollars with interest and costs in favor of said Charter; that on the same day an execution issued thereon, which was placed in the sheriff's hands to be executed, returnable to July rules, 1874; that George H. and J. E. Towles, at the time the execution issued and went into the sheriff's hands, had plenty of personal property to pay the same, and that before the return day of the execution, Charter directed the sheriff, to return the execution without levying the same, which in pursuance of such directions was returned, without having been levied, and

that George H. and J. E. Towles soon thereafter became insolvent, having no property, real or personal, out of which payment of the judgment could be had.

The bill further alleges that on June 23, 1874, while the execution was in the hands of the sheriff, and before the return day thereof, Charter "entered into a contract or agreement, whereby in consideration of a greater sum than the legal interest on the judgment from the 27th day of April, 1874, to the 26th day of December, 1874, to-wit, the sum of thirty-three dollars and twenty-five cents, then paid to him, Charter suspended his right to proceed to enforce payment of the judgment from the 23d of June, 1874, to the 26th of December, 1874," and the plaintiffs claim that Charter by his action directing the execution to be so returned, and by suspending his right to proceed to collect the amount of the judgment, they are in equity released from their liability as such sureties.

They further allege, that Charter afterwards on May 20, 1880, recovered a judgment on the note against them, as such sureties, for two hundred and fourteen dollars and twelve cents with interest from that date and costs, and sued out execution thereon against them and placed the same in the hands of the sheriff of said county who is harrassing them for payment; and they pray that Charter and all others, may be perpetually enjoined from collecting said judgment against them as such sureties, and for general relief. Upon this bill the judge in vacation awarded the preliminary injunction as prayed for.

To this bill the defendant, Charter, appeared in court and demurred, which demurrer was overruled, the bill was taken for confessed as to all the defendants except Charter, who at the same time answered fully, all the allegations of the bill. The answer admits the loan of the money, the execution of the note, the confession of the judgment, the issuing of execution, and that the same was placed in the hands of the sheriff of said county, returnable to July rules 1874, but he denies that when the execution was placed in the hands of the sheriff, George H. and J. E. Towles had abundant personal property subject to levy under said execution; he denies that he directed the sheriff to return the execution

without levying the same, or that he gave him any directions whatever in regard to it, and avers that the same was not returned until a month after the return day thereof.

He denies explicitly each and every allegation that for the consideration named therein, or for any other consideration he on the 23d day of June, 1874, or at any other time, entered into any contract or agreement, of any kind whatever, whereby, he suspended, his right to proceed to enforce the payment of his judgment from June 23, 1874, to December 26, 1874, or for any other time whatever, or that for any indulgence granted to Geogre H. and J. E. Towles, any consideration, was promised, paid or received; and avers that all indulgence given, was given at the request of said Knight, and that he did not suspend for any definite period of time his right to enforce payment of his judgment; that the sum of twenty-three dollars and thirty-five cents and nine dollars and ninety cents received by him were so received as credit, on the judgment, but denies that any part thereof was agreed, or understood to be applied, or was applied to pay interest in excess of lawful interest on the judgment. The answer further alleges,.that the plaintiff, Knight, who at that time was, and who still is the clerk of the circuit court of said county, procured Towles to confess the judgment, and at the same time induced them to give sundry claims due to them to a constable or justice for collection, with instructions as fast as any moneys were collected thereon to pay the same over to said Charter upon the judgment, who then agreed with Knight and the Towles, to be indulgent to see if they could not in this way raise the money to pay off the judgment. He also admits the recovery of the said judgment against plaintiffs for two hundred and fourteen dollars and twelve cents, and that he is endeavoring to collect his debt thereon as he lawfully may do, and asks that the injunction be dissolved and the bill dismissed. To this answer a general replication was filed, depositions of said Geo. H. and J. Emory Towles, T. K. Knight and of defendant, Charter, were taken, and these with copies of said note, judgments, execution and sheriff's return thereon, were all the proofs in the cause, and the court on the hearing thereof by its decree perpetually enjoined the

defendant, Charter, from collecting from said sureties his judgment against them. From this decree said Charter has obtained an appeal to, and a *supersedeas* to this Court.

*Cole & Miller* for appellant.

*Stuart and Blair* for appellees.

WOODS, JUDGE:

Two questions are presented for the consideration of this Court, by the transcript of the record of the proceedings in the circuit court, either of which if decided adversely to the pretentions of the plaintiffs, is fatal to the final decree rendered in this cause. We will consider them in the order in which they arise.

First, are the allegations of the plaintiffs' bill, if true as stated therein, sufficient to entitle the plaintiffs to the whole or any part of the relief sought? The bill seeks to enjoin the defendant, Charter, from collecting from the plaintiffs, as the sureties of George H. Towles and J. Emory Towles, the amount of his judgment against them for two hundred and fourteen dollars and twelve cents with interest from May 20, 1880, and seventeen dollars and five cents costs, on two separate grounds, viz, that having on May 5, 1874, obtained judgment and sued out execution thereon, and placed the same in the sheriff's hands, against the principal debtors, then solvent, he afterwards, before the return day of the execution, directed the sheriff not to levy it but return the same without levying it, which he did, and that the principal debtors soon after became insolvent and unable to pay the judgment; and secondly, that Charter on June 25, 1874, while the execution was in the hands of the sheriff, entered into a contract or agreement with George H. and J. E. Towles, whereby in consideration of a greater sum than the legal interest on the judgment from the 27th day of April, 1874, to the 26th day of December, 1874, to-wit of the sum of thirty-three dollars and twenty-five cents then paid to him he suspended his right to proceed to enforce payment of the judgment from the 23d of June, 1874, to the 26th December, 1874. It is a principle

lying at the foundation of every pleading, that if every fact alleged by the pleader be true, and they fail to show that he is entitled to some part of the relief sought, his pleading is fatally defective, and if such defect be taken advantage of in proper manner, he must be denied the relief asked, although in a proper case made, he might be abundantly able to prove it.

It is as much the duty of the surety as of his principal, to pay the debt when it falls due. His obligation to pay is not conditional, (unless specially made so) but absolute; being his duty to pay the debt when it becomes due, he has the right to do so, and the creditor is bound to receive it. If therefore the creditor is indulgent, and neglects to enforce payment, and the principal becomes insolvent, the surety for that cause alone, cannot complain; for the indulgence was granted to him, as well as to the principal, and it was alike the duty of principal and surety to pay the debt. The creditor is not bound to any active diligence; he may remain passive and indifferent. He may, if the contract be joint and several, sue the surety alone, or he may sue all jointly, he may cause the execution to be levied on the goods of the surety alone, for as to him, all are principals, all are equally bound. The creditor, unless specially required to do so under some statute, may sue or not sue; if he sues he may if he please dismiss or discontinue his suit. If he prosecute it to judgment he may, or may not sue out execution thereon, and if he sue out execution and place the same in the hands of the proper officer to be executed *he may at any time before the same is levied* recall the same and direct the officer not to levy the same, and to return it to the office, for until the actual levy of the execution, he has acquired no lien on any personal property out of which he could obtain satisfaction of his demand. *Humphrey* v. *Hitt*, 4 Ran. 104; 6 Gratt. 509.

But while the surety is thus bound to the creditor, he has certain rights against his principal of which he cannot be deprived without his consent.

He has the right to pay the debt as soon as it falls due, and sue and recover from his principal the amount he has paid.

He may if he apprehends loss from the creditor's indulgence file his bill in chancery against the principal debtor to compel him to make payment himself to the creditor.

If the creditor upon being requested by the surety to sue the principal refuse to do so, the surety by his bill may invoke the aid of a court of equity to compel the creditor, upon proper indemnity given him, to bring his action against the principal.

But the creditor has no right to alter the terms of his contract with the principal to the prejudice of the surety *without his consent.* If therefore without the *consent of the surety,* he makes an obligatory agreement with the principal by which the time of payment is extended to him so as to tie the hands of the creditor from proceeding in the interval to enforce the original contract, the consequence is that the remedies of the surety against the principal, are for the *same period suspended,* so as to expose him to a hazard or loss not contemplated by his undertaking, and this is enough to absolve him from his obligation, *without inquiring* into the question of *actual loss.* And so also if the creditor has in any manner acquired any other or additional security for his debt, the surety is entitled to the benefit thereof, and if he afterwards without the consent of the surety by any act, or negligence on his part release, surrender or abandon the same, the surety will be to that extent released from his obligation, but in every case, to entitle the surety to be relieved, the act complained of must have been done without his consent.

In *Baird* v. *Rice,* 1 Call. 18, there was judgment and execution against principal and surety and *levied* on the goods of the principal. The levy was released and the goods restored by creditor, *without the consent* of the surety. This was held to release the surety; the creditor had, without his consent, released the additional security acquired by the levy of his execution on the goods of the principal.

In *Bartlett's Ex'ors* v. *Winstons,* 1 Munf. 269, the sureties were released, where the creditor had obtained executions against principal and sureties, which were levied upon the property of one of the sureties where the creditor directed the sheriff to put off the sale of the property taken to a day after the return day, and to permit it to remain in

the possession of the principal debtor or his securities, such directions having been given *without the concurrence of the sureties*. A surety who seeks to discharge himself from liability on the ground of time given to the principal must state every fact essential to make it a discharge. He must state that the arrangement was made without the knowledge, or *against* his consent. *Hunter* v. *Jett*, 4 Ran. 104, and cases there cited; and so we apprehend, that if he grounded his claim, for relief on the fact that the creditor had released or relinquished some other security for the debt which he had acquired it would be necessary to make the same averment, that such release was made without his knowledge or without his consent. *Sayre, &c.*, v. *King, &c.*, 17 W. Va. 562; *Hunter* v. *Jett, supra.*

It is well settled that mere indulgence granted to the principal debtor will not release the surety. *Shannon* v. *McMullen*, 25 Gratt. 211; *Humphrey* v. *Hitt*, 6 Gratt. 509; *Walker* v. *Commonwealth*, 18 Gratt. 13; *Sneeds' Ex'or* v. *White*, 3 J. J. Mar. 525; *Alcock* v. *Hill*, 4 Leigh 622; *McKenny's Ex'rs* v. *Waller*, 1 Leigh 434. But the authorities are equally clear that if the creditor, upon a sufficient consideration, enter into a valid and binding contract or agreement with the principal debtor whereby without the consent of the surety he "ties his hands" so that he has suspended his right or disabled himself, for any definite period of time, however short, from proceeding to enforce the performance of the original contract, the surety will, in a court of equity, be thereby discharged. *Norris* v. *Crummy*, 2 Ran. 323; *Hunter's Adm'r* v. *Jett*, 4 Ran. 104; *McKenny* v. *Waller, supra; Alcock* v. *Hill, supra; Renicke* v. *Luddington*, 14 W. Va. 367; *Sayre* v. *King, supra.*

The courts have not undertaken to lay down any rule as to what constitutes such consideration for such an agreement for indulgence as will relieve a surety from his obligation. Each case must of necessity stand upon its own circumstances. In the case under consideration, the allegation of the bill on this point, is so exceedingly vague and ambiguous, that it may without doing violence to the grammatical construction thereof, be understood as admitting of two very different significations, one of which might tend to show the plaintiffs entitled to the relief prayed for, and the

other as showing a state of facts, which could in no case entitle them to such relief. The allegation referred to (if the bill were good in all other respects) is, that the said Charter " while the execution was in the hands of the sheriff, and before its return day, entered into a contract or agreement with the principal debtors, whereby in consideration of a greater sum than the legal interest on the said judgment from the 27th day of April, 1874, to the 26th day of December, 1874, to-wit the sum of thirty-three dollars and twenty-five cents then paid to him, suspended his right to proceed to enforce payment of the said judgment from the 23d of June, 1874, to the 26th day of December, 1874." This allegation avers that the creditor entered into an agreement, whereby for a consideration paid, he suspended his right, but it wholly fails to aver, it was part of said contract or agreement, that he *should suspend his right for any definite time*, or that such suspension was the necessary result of said agreement, or whether such contract obliged the creditor to suspend his right, or whether he might not at any time have proceeded to enforce his right, notwithstanding said contract. If he could have done so, then the surety is not entitled to be relieved, even if the fact be true that he did not enforce his right for the period between June 25 and December 26, 1874. But this allegation is equally ambiguous when speaking of the consideration for such contract. Does it mean that for thirty-three dollars and twenty-five cents usurious interest *already accrued upon the judgment*, or that amount of usurious interest *yet to accrue* upon said judgment paid in advance? If it was paid for interest lawful or usurious, already accrued, it was no consideration, for the whole would only be a credit on the debt to the relief of the sureties. But let us read this allegation of the bill, so transposed as to bring its component parts into closer relation to each other, thus: "that Charter &c., entered, &c., with said principal debtors, whereby, in consideration of the sum of thirty-three dollars and twenty-five cents, then paid to him, a greater sum than the legal interest on the judgment from April 27, 1874, to December 26, 1874, he suspended his right, &c." This allegation would have been equally true if it had averred that thirty-three dollars and twenty-

five cents was greater than the legal interest on the judgment from April 27, 1874, to January 27, 1877. It seems to us that this allegation of the bill does not sufficiently aver that Charter did enter into such a valid and binding contract or agreement with George H. Towles and J. Emory Towles, as bound him in law or equity not to pursue his remedy against them for any definite length of time, and that such defective allegation is insufficient to entitle the plaintiffs to any part of the relief prayed for. We have also shown that there is absolutely nothing in the first allegation, that Charter directed the sheriff to return said execution without levying the same. But we have also seen that where the plaintiff grounds his claim to relief, on the fact that the creditor had given additional time for payment to the principal creditor, he must in addition to all other necessary facts, also state that such additional time was given, *without, or against his consent*; without this statement the bill is fatally defective. For these reasons we are of opinion that the court erred in overruling the demurrer of the defendant, Charter, to the plaintiffs' bill.

Upon the merits of the case it seems to us also, that the plaintiffs have wholly failed to show themselves entitled to the relief prayed for. Every material allegation in the bill is denied by the answer of Charter. The deposition of George H. Towles, who borrowed the money, paid all that was paid, and transacted all the business in regard thereto, with a strong leaning towards the plaintiff, in answer to this question propounded by the plaintiffs. Question—"What arrangement, if any, was made between yourself and brother with L. R. Charter at the date you confessed judgment in regard to the debt?" Answer—"The arrangement was we were to have the money longer by paying the interest in advance, which I did." And to the further question, "When and in what way was that arrangement made?" he answered: "At the time we confessed the judgment, Charter told me he didn't want to push us; that we should have the money longer by paying the interest and paying it six months in advance, and deducting the amount of an account against K. B. Smith of twenty-two dollars or twenty-three dollars, and putting out book accounts to make him safe. I paid the in-

terest at that time six months in advance, after deducting Smith's account. The interest I paid was nine dollars and ninety cents—Charter said he would hold the execution, that all he wanted was the interest."

Upon cross-examination this witness manifested such a degree of forgetfulness as does not entitle his testimony to much consideration. He had forgotten what amounts of interest he had paid on said note, and the dates when paid, "thinks he took receipts; thinks he took one receipt for twenty dollars; don't know the date, thinks it was June 27; can't remember that we confessed the judgment at the instance of T. K. Knight. My brother requested me to go to clerk's office, T. K. Knight was clerk; don't know whether Knight procured us to confess judgment or not; don't remember whether Knight urged us to put out claims for collection and apply proceeds to said judgment or not. I put out a number of accounts into the hands of constable Gano for collection. I did so for benefit of Charter. I gave Charter the *Smith account to be credited on the note*; have no receipt for it. The conversation I had with Charter was when I paid the nine dollars and *something. I made no other arrangements at any other time.*" J. Emory Towles in his testimony says, in answer to question thirteen: "What arrangement, if any, or what conversation did you and your brother George or either of you have with Charter in the presence of T. K. Knight in regard to the debt for which Martin and Knight were sureties?" said, "So far as I am concerned *I had none.* I was never in consultation with those four that I remember of." The rest of his testimony is wholly immaterial. The plaintiff T. K. Knight testified that on the trial of the action of debt brought against said sureties on said note, they *claimed* and *had allowed* as set-offs against said two hundred dollars, twenty dollars, retained as interest at the time of the loan, and also said *sums of nine dollars and ninety cents and twenty-three dollars and thirty-five cents, paid on June* 26, 1874, *by said Geo. H. Towles!* that *he* never made any arrangement with any person whatever at any time to give time on said execution; that he was clerk of said court at the time said judgment was confessed, and had an understanding with J. E. Towles on or about April 27, 1874, to confess judg-

ment on said note; that he went to Charter, got the note from him, giving him a copy of it; got the judgment confessed, issued the execution and gave it to the sheriff; and that he had no knowledge of any arrangement to put out claims due the Towles to pay said debt to Charter. The deposition of said Charter fully supports every allegation of his answer, and disproves every allegation of the bill on which the plaintiffs' found their claim to relief, and especially the statement, meager as it is, of Geo. H. Towles, as to the pretended arrangement to give time by paying interest in advance, and he proves that the whole matter from the confession of the judgment, was in fact managed by said T. K. Knight, in the interest of himself and co-surety, and that Charter in no manner interfered with the matter.

There is therefore no sufficient proof of any contract of any kind to suspend for any definite time the remedy of said creditor on his original contract, much less such a valid and binding contract as bound him in law or equity, not to proceed to enforce the collection of his judgment against the principal debtors.

We are therefore further of opinion, that the circuit court erred in perpetuating said injunction, and its said decree doing so must be reversed.  It is therefore adjudged, ordered and decreed that the decree of the circuit court of Doddridge county, rendered in this cause on the 30th of March, 1882, be reversed and annulled, and this Court proceeding to render such decree as the said circuit court ought to have rendered, it is further adjudged, ordered and decreed that the said injunction awarded in said cause enjoining the appellant from collecting from the appellees his said judgment against them for two hundred and fourteen dollars and twelve cents with interest thereon from the 20th day of May, 1880, and seventeen dollars and five cents costs, be wholly dissolved, and their said bill dismissed, and that said appellees do pay to the appellant, as well his costs by him about his defence in said circuit court in that behalf expended, as his costs, about the prosecution of his said appeal and *supersedeas* in this Court in this behalf expended.

THE OTHER JUDGES CONCURRED.

DECREES REVERSED.    BILL DISMISSED.