# CHARLESTON.

McKenzie v. Wiley et ux.

Submitted January 30, 1886.—Decided February 20, 1886.

1. A creditor ·having a judgment against his principal debtor causes an execution to be issued thereon, which comes to the hands of the sheriff and is levied by him on property of said principal debtor sufficient to satisfy said execution ; after such levy the sheriff, either with or without directions from the creditor, restores said property to the debtor, who disposes of it without satisfying said execution; and on the bond, upon which said judg- ment was recovered, another person is surety, who did not con- sent to the restoration of the property to said debtor, Held :

   The surety is released from all liability to the creditor for said debt.  (p. 660.)

2. The levy of an execution upon sufficient property to satisfy the same is *prima facie* a satisfaction of the execution as to the exe- cution-debtor.  (p. 662.)

*Johnston & Reynolds* for plaintiffs in error.

*R. C. McClaugherty* for defendant in error.

Snyder, Judge :

James R. Wiley executed his bond, which was also signed by Louisa J. his wife as his surety, for $163.00 payable to John A. McKenzie December 9, 1875.  Upon said bond McKenzie obtained a judgment against said Wiley and wife in an action at law brought by him in the county court of Mercer county.  Subsequently, he brought this suit in the circuit court of said county against Wiley and wife to subject the separate estate of the wife to the payment of said debt.  The bill avers that the husband is insolvent and that said judgment is a lien on the real estate of the wife.

It also avers that, if the court should hold said judgment invalid, as to the wife, the plaintiff may be remitted to his right to charge her separate estate by reason of the bond signed by her and that payment thereof may be decreed out of her said estate.

The wife answered the bill denying the validity of said judgment as to her. By way of defence, she avers, that on April 9, 1877, the plaintiff caused an execution to issue on said judgment which was placed in the hands of the sheriff of Mercer county, that at that time James R. Wiley, the principal debtor, had sufficient property to pay the debt, that in fact the sheriff levied the execution upon a bay mare of the value of $150.00 the property of the said James R., that said execution was afterwards by the directions of the plaintiff returned to the clerk's office by the sheriff and said mare returned to said James R. Wiley without the consent of respondent; that before said execution was returned and said mare restored, the plaintiff and said James R. entered into a written contract without the consent of respondent by which the said James R. sold to the plaintiff a colt for which the plaintiff gave him credit for $40.00 on said execution and bound himself, that the balance of the execution should not be enforced until the final determination of the suit of *Wiley* v. *Dare* then pending in the circuit court of Mercer county, and that said suit is still pending and undetermined, whereby she claims that she is released from liability for said debt. She exhibits with her answer, the execution and return thereon and also the written contract referred to in her answer.

The execution is dated April 9, 1877, and made returnable to July rules. The return thereon duly signed by the sheriff it as follows:

"June 1, 1877. Levied on one bay mare, property of James R. Wiley to satisfy the within *Fi. Fa.*"

"Returned by written directions of the plaintiff, June 1, 1877."

The written contract is in substance and effect as stated in the answer and is signed by the plaintiff and dated May 30, 1877.

The only witness examined in the cause was the defend-

ant James R. Wiley. He says: "The mare was worth $150.00 at the time. I kept the mare then for two years and finally traded her off." In regard to his wife's knowledge of the transactions between himself and the plaintiff, he says: "She had nothing to do with it. She was at home and John A. McKenzie and myself were here, and she gave no consent in any way and knew nothing about it." He also states, that the sheriff called upon him to know what he was going to do about the levy upon the mare, that he showed him the contract between him and McKenzie and he looked at it and said it was all right.

By a decree, entered November 24, 1884, the court directed the sheriff to seize and sell sufficient personal property of the defendant, Louisa J. Wiley, to pay the plaintiff's debt then amounting to $203.21 and the costs; and from this decree said defendant appealed.

Considerable argument has been expended by counsel in their briefs filed in this Court as to the effect of the written contract between the plaintiff and James R. Wiley referred to in the answer of the appellant. In my view of this cause, it is unnecessary to consider said contract or the effect of it.

It is certain that the judgment at law recovered by the plaintiff on the bond was invalid and void as to the appellant and consequently did not operate as a lien upon her real estate. *Stockton* v. *Farley*, 10 W. Va. 171; *Radford* v. *Carwile*, 13 W. Va. 572.

The important enquiry in this cause is, whether the conduct of the plaintiff, McKenzie, in reference to the execution issued upon his judgment discharged the appellant from liability in whole or in part?

It may be regarded as the settled law of Virginia and this State, that a surety is entitled to be relieved from his liability to pay the debt of his principal, either *in toto* or *pro tanto*, as the case may be, if the creditor, without the consent of the surety, make a new contract with the principal, founded on a valid consideration, to postpone the day of payment of the debt for a time, however short, beyond the day on which it was to be paid by the terms of the contract on which the surety was liable; or if the creditor, without the consent of the surety, release any lien which he may have on any prop-

erty of the principal for the security of the debt. In the first case, the relief of the surety is absolute and *in toto*, without regard to the extent of the damage or loss actually sustained by reason of such new contract, or whether any damage or loss was in fact sustained; and in the latter case the surety will be discharged *in toto* or *pro tanto* accordingly as the value of the property released was equal to or less than the amount of the debt.  *Shannon* v. *McMullin*, 25 Gratt. 211; *Bullitt* v. *Winston*; 1 Munf. 269; *Knight* v. *Charter*, 22 W. Va. 422; *Glenn* v. *Morgan*, 23 W. Va. 467.

Where the creditor has a judgment upon his debt and an execution thereon in the hands of the sheriff, such creditor by the levy of the execution on the property of the debtor acquires a specific lien on such property. If such levy be upon the property of the principal debtor, and the creditor thereafter releases, perverts or destroys the lien of such levy, without the consent of the surety bound for such debt, he exempts the surety, to the extent of the value of the property so levied upon, or the loss occasioned thereby, from liability for said debt.  *Baird* v. *Rice*, 1 Call. 18; *Humphrey* v. *Hilt*, 6 Gratt. 509, 526.

Accepting a confession of judgment from the principal debtor with a stay of execution for a limited time, without the consent of the surety, was held to be a release of the surety in equity.  *Ward* v. *Johnson*, 6 Munf. 6.

In *Bullitt* v. *Winstons*, 1 Munf. 269, it was decided that, "A plaintiff, by directing the sheriff to put off the sale of property taken in execution to a day after the return-day, and suffer it to remain in the possession of the principal defendant or his securities, *releases* the *securities* altogether from that or any subsequent execution; such direction being given without their concurrence."  "In such case, the plaintiff's adding to the direction the words: '*holding the property subject to the said execution,*' can not prevent the release from operating."

The law as I have just stated it does not seem to be questioned in this cause by the counsel for the appellee, but he claims that the facts in this cause do not bring it within the influence of the principles stated.  It is claimed that the words, "Returned by written directions of the plaintiff," en-

dorsed on the execution and signed by the officer, constitute no part of the officer's return, and that they are therefore not evidence of any such direction by the plaintiff. It is not questioned, that the execution was, in fact, returned to the clerk's office by the sheriff, and that the property was restored to the principal debtor. The law makes it the duty of the officer to make his return upon the execution of the manner he has executed it. Sec. 6, ch. 41, Code. It is likewise his duty to show by his return when he fails to execute it, the reason or cause for such failure. That such is the law can not be questioned. The return of such matter is not conclusive as to parties other than the officer, but is *prima facie* evidence as to all persons affected by it including the execution creditor. Crocker on Sheriffs, secs. 45, 46; Murfree on Sheriffs, sec. 866.

But conceding that said words are no part of the sheriff's return and, therefore, not evidence against the plaintiff, the result as to the surety must be the same in this cause. It is not controverted that that portion of the return, which shows that a levy was, in fact, made, is evidence. When an officer levies an execution upon property, it is his duty to sell it and convert it into money and pay the same over in satisfaction of the execution. A levy upon sufficient property to satisfy an execution is a satisfaction of the execution so far as the debtor is concerned unless it is restored to him or lost by his fault. It is likewise true that, where the property levied upon is insufficient to pay the execution, the levy will be a satisfaction of the execution *pro tanto*. If the officer fails to sell the property or permits it to be lost or destroyed, the only remedy of the creditor is against the officer and his sureties. He has no remedy in such case against the execution debtor. Murfree on Sheriffs, sec. 529; *Cranmer* v. *McSwords*, 26 W. Va. 412; *Campbell* v. *Wyant*, 26 W. Va. 702.

If the property levied upon is restored to the debtor, the execution is not satisfied as to him; but if the levy is adequate and the property is restored to the debtor by the sheriff, either under or without the direction of the creditor, the surety will be thereby discharged and exonerated, provided the levy was upon the property of the principal debtor and the restoration was without the consent of the surety. The

effect will be the same where the property is lost or destroyed by the default of the officer. *Walker* v. *The Commonwealth*, 18 Gratt. 13, 44.

In the cause before us the evidence clearly establishes that the levy was actually made by the sheriff on a mare worth $150.00, the property of James R. Wiley, the principal debtor, that the sheriff, either with or without, the direction of the plaintiff restored said mare to the debtor and she was not afterwards sold by the sheriff or returned to him, and that the said mare was so restored to the debtor without the knowledge or consent of Louisa J. Wiley, the surety. It also appears that the value of said mare, $150.00, together with the credit of $40.00 for the colt, would have fully satisfied the execution if applied in June, 1877, the date of the levy. These facts, it seems to me, show plainly that the appellant was entitled to be discharged from all liability for said debt, and that the circuit court erred in not so decreeing. The decrees of the said court must therefore be reversed, and a decree entered by this Court discharging and releasing the appellant from all liability as surety for James R. Wiley on the bond and debt mentioned in the plaintiff's bill with costs to her in this and the circuit court.

REVERSED.