# CHARLESTON.

FIRST NAT. BANK OF CUMBERLAND *et al.* *v.* PARSONS *et al.*

Submitted January 28, 1896—Decided April 8, 1896.

1. PREFERENCE OF CREDITORS—INSOLVENT DEBTOR—INSOLVENT'S CONVEYANCE.

Where an insolvent debtor gives or attempts to give his creditor any preference which is void under the latter clause of section 2 of chapter 74 of the Code, such gift, conveyance, *etc.*, of the insolvent debtor will be dealt with by the court as required by such latter clause, whether such gift or conveyance be *bona fide* or be fraudulent in law or in fact.

2. PREFERENCE OF CREDITORS—INSOLVENT'S CONVEYANCE—APPLICATION OF PROCEEDS.

If the sale or conveyance was *bona fide*, and for a price equal to the full value of the property, and the court has control of the proceeds, the preference will be set aside, and the proceeds will be applied to the debts, and paid to the creditors as required by the statute.

3. PREFERENCE OF CREDITORS—INSOLVENT'S CONVEYANCE.

If the sale is *bona fide*, but the price is not substantially equal to the then full value of the property, a sale will be made by the court, so far as may be necessary to avoid the preference and secure the rights of all the creditors.

4. PREFERENCE OF CREDITORS—INSOLVENT'S CONVEYANCE.

If the sale or conveyance is fraudulent, and gives such unlawful preference, then such sale or conveyance will be set aside, and a resale be made, so far as may be necessary to pay the honest claims against such insolvent fraudulent debtor.

5. PREFERENCE OF CREDITOR—INSOLVENT'S CONVEYANCE—PRIORITY OF ATTACKING CREDITOR.

The creditor who is the first to assail the fraudulent conveyance of an insolvent debtor does not thereby acquire as the reward of his diligence a preference over the other creditors.

6. HUSBAND AND WIFE—WIFE'S SEPARATE ESTATE—HUSBAND'S CREDITORS.

A father conveys a tract of land to his son, and requires him to pay as a part of the consideration the sum of eight hundred dollars to a married daughter. This sum the son pays to his sister, who at the same time lends it to her husband, taking his note, executed to herself, for its repayment. There is no imputation against the *bona fides* of her claim against her husband except such inference as may be drawn from the relation of husband and wife. *Held*, such note of the wife is her sole and separate property, and is good against the creditors of her husband.

7. PARENT AND ADULT CHILD—SON'S SERVICES—PARENT'S CREDITORS.

A son who has attained his majority makes an express contract with his father, whereby he is to work for his father at the price of forty two dollars per month and board. The services were rendered, and were shown to be reasonably worth the contract price. There is no imputation against the *bona fides* of the claim of the son, except such inference as may be drawn from the relation of father and son. *Held*, such claim of the son is not for that reason invalid as against the creditors of the father.

8. SURETIES—RELEASE OF SURETY BY CREDITOR'S ACTS.

Where a creditor, without the consent of the surety, releases any lien which he may have on the property of the principal debtor for the security of the debt, the surety will be discharged

*in toto* or *pro tanto*, accordingly as the value of the property released was equal to or less than the amount of the debt.

9. SURETIES—EQUITABLE DEFENSE—EQUITY JURISDICTION.

In this state the surety can not make such defense in a suit at law on a bond, such plea not being within the meaning of section 5 of chapter 126 of the Code, but is still, in this state, a matter of exclusive equitable jurisdiction.

10. SURETIES—PRINCIPAL'S REAL ESTATE.

Where a principal and sureties are before the court, the land of the principal debtor should be subjected to sale in exoneration of the land of the sureties, so far as it can be done without too great delay; nor should the entire burden be thrown upon any one surety so far as it can be avoided without prejudice to the rights of the creditor.

11. EQUITY PRACTICE—EXCEPTIONS—ERROR.

When a plaintiff in equity files exceptions to an answer, they should at once be set for argument, but, if not passed upon by the lower court, it will not be ground of error in the appellate court, unless such exceptions were material, and ought to have been sustained.

12. EQUITY PRACTICE—REFERENCE—DEPOSITIONS.

An order of reference should not be made solely to enable the parties to take depositions. The cause should be so far developed by the pleadings and the proofs as to show the propriety of an order of account, and the extent to which it should go.

J. P. SCOTT, F. O. BLUE and DAYTON & DAYTON for appellants :

I.—*Compensation between parent and adult child.*—31 Gratt. pp. 52-56; 20 W. Va. 23.

II.—*There was nothing immoral or illegal in Ward Parsons allowing Lemuel W. Parsons the credit of $2,900 in the deed of March 4th,* 1892.—2 Johns. Chy. 306; 26 Gratt. 563; 8 Leigh, 271.

III.—*A deed, honest and lawful upon its face, must be treated as such until it is shown to be otherwise by evidence.*—22 W. Va. 357, syl. pt. 10; 17 W. Va. 717.

IV.—*The onus probandi is on him who alleges fraud, and the fraud must be clearly and strictly proved.*—22 W. Va. 357, syl. pt. 9; 2 Munf. 310; Kerr, Fraud, 382.

V.—*The finding of a commissioner on a question, purely of fact, must be given great weight.*—30 W. Va. 147, syl. pt. 7; 26 W. Va. 710; 14 W. Va. 1; 21 W. Va. 698.

VI.— *Where the debts of a debtor are greater than his assets, he is insolvent.*—37 W. Va. 552.

VII.—*If insolvent and no positive fraud proved against him, a conveyance by him is for the benefit of all creditors.*—Code, 1891, c. 74, s. 2; 37 W. Va. 552; 39 W. Va. 515; 32 W. Va. 232.

VIII.—*Creditor must exhaust estate of principal before subjecting surety's estate.*—20 W. Va. 211-222; 28 Gratt. 815; 32 Gratt. 254.

A. B. PARSONS for appellant, cited Murfree, Off. Bonds, chaps. 20, 21; 22 U. S. 680, 703, 720; 40 U. S. 207-9; 62 U. S. 76; 25 W. Va. 45; 29 W. Va. 527; Am. Ann. Dig. 1887, § 77; Id. 1890, § 66; 17 Cal. 504; 6 Ohio, St. 502; 5 Wait, Act. & Def. 227, 231; 18 Eng. Rep. 104; 3 Wash. C. C. 70; 17 Ga. 521; 3 Binn. (Pa.) 520; 5 Md. 102; 11 Cush. 125; 30 Vt. 122; 46 N. Y. 93; 6 Leigh, 547; Gilmer, 149; 1 Call, 18, 9; 10 Gratt. 252; 2 Lead. Cas. Eq. 1318, 1359; 7 Page, 560; 14 Barr, 273; 10 Johns. 387; 2 Johns. Chy. 554; 28 Ill. 486; 2 Jones, Eq. 321; Smedes & Marsh. 524; 24 Vt. 46; 1 Bart. Chy. Prac. §§ 16, 7, 10; Id. pp. 36, 37, 33; 2 Sto. Eq. Jur. 71, 74; 14 W. Va. 66; 27 W. Va. 677; 17 W. Va. 717; 34 W. Va. 442; 15 Ohio, 403; Brandt, Sur. §§ 223, 224; 37 W. Va. 552, 572; 39 W. Va. 518, 540, 541, 622; 32 W. Va. 232, 34; 11 W. Va. 584; 15 W. Va. 733; 24 W. Va. 643; 35 W. Va. 634, syl. pt. 3; 54 Conn. 330; 64 Am. Dec. 363; 27 N. J. Eq. 157; 3 N. H. 432; 2 Tuck. Comm. (Ed. 1837) 482, 483.

W. B. MAXWELL and A. J. VALENTINE for appellees, cited Code, 1891, c. 106, s. 10; Bump, Fraud. Con. 34, 36, 37, 56; 19 How. 376; 20 How. 45; 23 How. 477; 2 Pet. 112; 5 Ohio, 121; 4 W. Va. 71; 30 W. Va. 563, *et seq.;* 29 W. Va. 452; 10 W. Va. 347; 23 W. Va. 645; 10 W. Va. 106, 107; 15 W. Va. 512-519; 30 W. Va. 443; 32 W. Va. 507; W. Va. Bar, Jan. No. 1895, p. 12; 30 W. Va. 568-9; 5 W. Va. 378-9; 21 Gratt. 182; 24 W. Va. 540; 22 W. Va. 422, 428; 23 W. Va. 267; 27 W. Va. 658; 9 W. Va. 483; 6 Gratt. 509; 25 Gratt. 211; 6 Gratt. 524; Acts 1891, c. 123, p. 353; 34 W. Va. 480; 25 W. Va. 108-110; 26 W. Va. 710-718; 29 W. Va. 659-666; 14 W. Va. 264; 3 Gratt. 518.

HOLT, PRESIDENT :

On appeal from a decree entered on the 21st day of June, 1895, by the Circuit Court of Tucker county in four chancery causes heard together.

The facts are as follows: Defendant Ward Parsons, the debtor complained of, together with his wife, by deed dated the 14th day of March, 1892, sold and conveyed to his son, Lemuel W. Parsons, all his real estate, *viz.*, "the home farm on which Ward Parsons now resides, containing, with contiguous tracts, four hundred and twenty acres; seven other tracts, containing four hundred and sixty eight acres, on Backbone Mountains; and a tract of twenty two acres in Horseshoe Bottom, all in the county of Tucker." The consideration was eight thousand and three dollars, to be paid as follows: To G. M. Wicks, for the use of M. W. Dunham, a judgment for seven hundred and eighty seven dollars and thirty cents and fourteen dollars and forty eight cents costs; to the First National Bank of Piedmont, W. Va., the sum of two thousand, four hundred and eighty dollars, evidenced by two notes; to the Bank of Kingwood, the sum of three hundred and eighty six dollars; to Sarah A. Parsons, the wife of Ward Parsons, in eighteen months, the sum of one thousand, two hundred and thirty dollars, the amount being money borrowed by Ward Parsons of his wife, Sarah A., being her separate estate, derived from her father's estate, and borrowed from her, as evidenced by writing held by her; to A. H. Bonnefield, administrator, *etc.*, seventy dollars; to W. H. Glover, the sum of sixty dollars; to the board of education of Black Fork district the sum of two hundred and sixty eight dollars and twelve cents and twelve dollars and twenty cents costs, a judgment; and two thousand and nine hundred dollars to be retained for labor and services rendered by Lemuel W. Parsons to his father, Ward Parsons, from the time of his majority, in 1886, to the present time; and to secure the payment of these sums as directed Ward Parsons expressly reserved on the face of the conveyance a vendor's lien for said creditors on the real estate thereby conveyed.

The four several creditors of Ward Parsons by their four several bills in equity attack this deed as fraudulent and

void, as made with intent on the part of the grantor to defraud, hinder, and delay them in the recovery of their debts, of which frauds the grantee had notice, and in which he participated. It is conceded that all four bills base their right to overthrow the deed on precisely the same grounds, and therefore appellants have had copied into this record only the bill, *etc.*, filed in the case of the First National Bank of Cumberland,

The detailed statement of the nature of plaintiff's claim is as follows: On the 15th day of August, 1891, Ward Parsons, together with Charles H. Barrett, under the latter part of section 10 of chapter 106 of the Code, as sureties of William A. Barrett, the attachment debtor, executed to the Potomac Paper Company, the attachment creditor, a replevy bond, with condition to perform the decree of the court in the said cause, which being accepted by the officer as sufficient, he released from the attachment the whole of the property attached. The circuit court of Tucker county was then in session, and had, on the 13th day of August, 1891, entered a personal decree against Barrett, the attachment debtor, who had appeared in favor of the paper company, for two thousand four hundred and seventy six dollars, with interest from date—the debt here in question—and directed the attached propety to be sold to satisfy the same. But the court being still in session on the 17th day of August, 1891, the court, on motion of Barrett, the replevy bond being produced, set aside the personal decree and the order directing the sale, and by "consent of parties no decree was to be entered in the cause in favor of the plaintiff at that term of the court." On the 23d day of November, 1891, the court gave a final personal decree against Barrett for two thousand four hundred and seventy six dollars, with leave to sue out execution, which was sued out, and duly returned "No property found." Suit was then brought on the joint and several replevy bond against the surety, Ward Parsons, to which he pleaded conditions performed, and a special plea that plaintiff the paper company, without the knowledge or consent of defendant Ward Parsons, who was only the surety of Barrett, consented to and had set aside the decree against Barrett of 13th Au-

gust, 1891, as aforesaid, by reason whereof the condition was performed, and he was discharged, and plaintiff had no demand against him *etc.*, to which plaintiff replied, and, the cause being submitted to the court on 13th day of March, 1893, the court found for plaintiff, and gave judgment therein for the sum of two thousand seven hundred and eight dollars and two cents; that prior thereto the paper company had for a full and adequate consideration assigned the said claim to the plaintiff the National Bank of Cumberland, and that, as to the whole controversy in that respect, it is *res judicata;* that then defendant Ward Parsons conceived the fraudulent design and purpose of conveying and transferring to his son, defendant Lemuel W. Parsons, all his property, both real and personal, and accordingly as to his land executed the deed of 8th of May, 1892, already mentioned, which plaintiffs allege was at the time worth at least twenty thousand dollars Plaintiff alleges that all the debts therein mentioned and secured are just, except the one to Lemuel W. Parsons, Sarah A. Parsons, and the one to the First National Bank of Piedmont, that the one was the son and the other the wife of the debtor, Ward Parsons; that both were "trumped up claims," without any validity, gotten up as color to cover their fraudulent design; that the claim of the Piedmont Bank was a just and true one, but that it was due from S. B. Walmsley as principal; that Ward Parsons was only surety, and had standing against the land of his son-in-law, Walmsley, a decree for the sale of a valuable tract of land worth eight thousand dollars—more than sufficient to save him harmless, *etc.*—praying that the deed from Ward Parsons to his son, Lemuel W., may be set aside as having been made to defraud plaintiff, and that the debts of the son and wife be set aside as invalid as against plaintiff, and that the claim of the Piedmont National Bank be held to be primarily the debt of S. B. Walmsley, and that it be first enforced against the land of S. B. Walmsley before Ward Parsons be made liable, *etc.*, and for general relief.

Ward Parsons appeared, and demurred, because W. A. Barrett, Jr., & Co. were not made parties defendant. Plaintiff amended his bill, making the two Barretts parties. On

the 8th day of March, 1894, Ward Parsons demurred to the amended bill, and, the same being overruled, he filed his separate answer, denying all the allegations of the bill specifically, and at the November term, 1894, Lemuel W. Parsons and Sarah A. Parsons each filed their separate answers, to which three answers plaintiff filed general replications. The court, on the 29th day of November, 1894, entered an order of reference in which the court holds that the deed of Ward Parsons to Lemuel W. Parsons, dated 4th March, 1892, ought not, at that stage of the cause, to be passed upon so far as it affects the rights of plaintiff, and refers the cause to Commissioner Conley to ascertain and report (1) the lands owned by defendant Ward Parsons, the state and condition of his title thereto, including the lands embraced in the deed to his son; (2) the liens thereon, with their amounts, priorities, and to whom owing; (3) the facts relative to the Walmsley debt, so that the court can determine whether the same shall be paid out of the lands of Ward Parsons or out of the lands of Walmsley; (4) he may report any other pertinent matter deemed proper by himself, or that may be required by the parties, or by either of them, to be reported. It is assigned as cross error by appellee that the court entered this order of reference before having passed upon the question as to whether or not the conveyance by Ward Parsons to L. W. Parsons was fraudulent.

An order or decree for an account is not to be made merely because it is asked for. The cause must be so far developed by the pleadings and proofs as to demonstrate the propriety of an account, and the extent to which it should go. 4 Minor, Inst. pt. 2, p. 1357; 2 Bart. Ch. Prac. § 189; *Neely* v. *Jones*, 16 W. Va. 625; *Allen* v. *Smith*, 1 Leigh, 252; *Corbin* v. *Mills*, 19 Gratt. 465; *Lee Co.* v. *Fulkerson*, 21 Gratt. 182; *Watkins* v. *Young*, 31. Gratt. 94; 2 Daniell, Ch. Prac. 997. But the court was not, in this case, compelled to decide the question of fraud in advance, for it needed the ascertainment of certain facts before pronouncing such a decree. Had Ward Parsons other land, what was the dignity and amount of these judgments provided for in the deed assailed? Was Ward Parsons insolvent, and did he, by the deed complained

of, give any preference prohibited by the latter clause of section 2 of chapter 74 of the Code of 1891 (page 649)? What were the facts as to the Walmsley debt? There was no error in entering such order, for the pleadings and exhibits showed the propriety of the order, and the extent to which it should go; and the importance of having a speedy, and, in a proper case, a preliminary, ascertainment of facts, is recognized by section 5 of chapter 129 of the Code, and such vacation orders have been found to be quite useful in speeding chancery causes.

Neither is it proper to send a cause to a commissioner merely to give plaintiff or defendant an opportunity to take their proof, and appellees except on that ground to the depositions of the witnesses taken and returned by the commissioner. The commissioner in chancery is expressly authorized to take depositions in any pending case. Code, c. 130, s. 33. This authority goes back to the Code of 1819 (1 Rev. Code, 1819, §§ 39, 40 c. 43, p. 203) and this power is not restricted to a case referred to him, or to depositions to be taken under his notice of taking the accounts. These depositions show that they were taken before Commissioner Conley, in the presence of the counsel of all parties, who examined, cross-examined, and re-examined them. They are signed by the witnesses, duly certified and returned by the commissioner and filed. I can see no reason why the circuit court could not read them on the hearing, as they were returned before the final decree. See Code, c. 130, s. 35. Had these depositions any proper bearing on the questions of fact referred to the Commissioner? The bill charges that the debt of one thousand two hundred and thirty two dollars secured in the deed assailed, and the debt of two thousand nine hundred dollars, therein mentioned as due defendant L. W. Parsons, are "trumped up claims," utterly destitute of any proper consideration, and these defendants are called upon to answer where and how they got this money, *etc.* The answer of Mrs. Sarah A. Parsons is quite brief. She says that she knows but little, if anything, of the allegations of the bill, except as to that part that refers to her debt. As to that she says it is the proceeds of her patrimony received from her father, William R. Parsons, who, by deed

dated 25th May, 1881, conveyed his lands to his son, Joseph
Parsons, whereby he provided as part of the consider-
ation that he should pay to his sister, Sarah Ann Parsons,
wife of Ward Parsons, the sum of eight hundred dollars in
eight annual payments of one hundred dollars each, com-
mencing on the 1st day of December, 1884, and for which
Joseph executed to Sarah A. his eight promissory notes,
and she files this deed as an exhibit with her answer.
Under this order of reference Commissioner Conley took
the dispositions of some twelve witnesses, in the presence of
counsel on both sides, who examined and cross-examined
them.   The commissioner filed his report on the 4th day
of March, 1895.   It was excepted to by each party, and on
the 9th day of March, 1895, the commissioner was required
to report forthwith upon the exceptions.   This was done,
and the second report filed on the 11th day of March.   On
the 15th day of March the cause was again recommitted,
with directions to ascertain and report whether Ward Par-
sons became insolvent by reason of making the deed to W.
W. Parsons, and various other matters.   To this the com-
missioner reported that this order of reference could not be
executed, for want of proof.   Both plaintiff and defendant
neglected to take further proof, therefore he could not make
a report responsive to the order of reference.   I hardly
think that a sufficient excuse for not responding to so vital
a matter.   On the subject generally see *Ward* v. *Ward's
Heirs*, 40 W. Va. 611 (21 S. E. 746).   Whether the claim of
Sarah A. Parsons was a lien or not was in one view one of
the matters expressly referred, and was certainly so far per-
tinent to the issue made up by the pleadings as that he might
properly report on it.   So defendant L. W. Parsons, an-
swering particularly the informal interrogatories put to him
in the bill, says that for more than five years after he be-
came of age he conducted his father's business, for which
his father owed and agreed to pay what amounted on the
4th day of March, 1892, to the sum of two thousand nine
hundred dollars.   These depositions show that he rendered
these services for his father after he had become twenty
one years old, on an express contract that he was to be board-
ed and receive forty two dollars per month; and the testi-

mony of seven or eight witnesses tends at least to show that these services were rendered, and, considering their character, were worth at least that sum per month. These two points were thus put in issue by the pleadings, and were comprehended in the order of reference without regard to any question of fraud, or to what the commissioner might think or report on that subject.

It is not contended that the deed assailed was fraudulent on its face. The bill alleges all the debts thereby secured to be *bona fide* except those two. As to them it calls for answer to definite and specific questions, and these particular and precise answers are given. Plaintiff submits to a demurrer for want of necessary parties, and has the case on the trial docket at June term, 1894, when defendant Ward Parsons answers the amended bill. Plaintiff files six exceptions to this answer. An answer may set up any number of defenses which are consistent with each other (1 Bart. Ch. Prac. 391; 1 Daniell, Ch. Prac. 713) and a party by answer to amended bill may set up new matter of defense, separate and distinct from that set up in his answer to the original bill. An answer can not be demurred to, nor its sufficiency in law be raised by exception. That can only be done when the defense is by way of plea, when it will be set down for argument on its sufficiency in law. It is not our practice to refer exceptions to answers to a commissioner, but they are at once to be set down for argument (section 54, chapter 125, Code: 1 Bart. Ch. Prac. 394) and the court decides whether the answer is sufficient or not. For a full discussion of the subject, see *Richardson* v. *Donahoo*, 16 W. Va. 685. In the case now in hand the exceptions to this answer were expressly waived. But, even if they had not been waived, or had not been expressly passed on by the court, we regard them as not well founded, and there could have been no error in overlooking them or otherwise failing to pass on them.

This brings us to the appellee's important cross assignment of error—did the court err in allowing to Sarah Parsons the debt of one thousand two hundred and thirty dollars claimed by her? Why should her right to it be called in question? Plaintiffs, making her half-brother, Joseph

Parsons, their own witness on the subject, proved that she received through him eight hundred dollars from her father's estate. Mrs. Sarah Parsons also proves that she received four hundred dollars from her mother's estate. She let her husband have the eight notes of one hundred dollars each on her brother, Joseph Parsons, on the 20th day of March, 1883, for which he at that time received the money by an arrangement with her brother by which he settled them before they fell due; and Ward Parsons on that day executed to her his note therefor, which is the claim in controversy. There is not a particle of evidence to rebut this, or to put in question the *bona fides* of her claim to this sum and its interest as her sole and separate property, beyond the mere relation of husband and wife, for she has shown that it came from her father's estate, and was loaned, and not given, to her husband. The plaintiffs who protest so earnestly against this part of the decree should call to mind that a generation of husbands and wives have been born since the Code of 1868, and that now it is out of time in this state to insist on the common-law doctrine that her property becomes his property, and liable for his debts, as soon as he gets hold of it.

We now proceed to examine the grounds of error assigned by appellants.

No. 3. The debt secured in the deed to the First National Bank of Piedmont originated as follows: Defendant S. B. Walmsley borrowed the money of the bank, with Joseph Parsons, S. E. Parsons, and D. S. Menear as sureties or indorsers. Walmsley failed to pay. Joseph Parsons, S. E. Parsons, and Ward Parsons paid the discount, *etc.*, until the debt aggregated about two thousand six hundred and sixty seven dollars and fifty nine cents, and a decree was obtained by these latter parties (Menear having been released) *to sell* Walmsley's land in order to repay them. The other two assigned their interest in the decree to Ward Parsons, who assumed the whole debt to the bank by a new note, the other two going his security. This made it the debt of Ward Parsons, but he has standing as his security the decree for the sale of Walmsley's land, shown to be worth some eight or nine thousand dollars, so that this

decree is his property; and I can see no reason why it may not be used, directly or indirectly, for the payment of the debts of Ward Parsons, as was done by the court in this case.

No. 1. The court held the debt of two thousand nine hundred dollars recited in the deed assailed as due to the son and grantee, Lemuel W. Parsons, from his father, Ward Parsons, and as part of the consideration for the land conveyed as fraudulent and void as to plaintiff and other creditors of Ward Parsons. As we have already seen, the services were rendered by son to father after the former had attained the age of twenty one, and upon an express contract that the son was to receive forty two dollars per month and board; and that he worked about five years and four months, a good part of the time hauling store goods, commissaries, powder, dynamite, *etc.*, for railroad contractors. It is shown that he rendered the services, and that they were worth at least the sum contracted to be paid. This appears from the testimony of some four or five disinterested witnesses, is not directly contradicted by any one, nor have I been able to find any circumstance in the record tending to cast doubt on the correctness or honesty of the claim. All that is said against it is that he would not be likely to save so much. But it is shown that he was a good trader, bought and sold cattle, and had other property and means of support; and, we may conjecture, was helped by his father in various ways. I infer that the court below did not rest its decision on the ground that no such claim existed; that it was contrived for the occasion; but that the deed, in providing for this claim, was intended to delay, hinder, and defraud the plaintiff.

The deed is not fraudulent on its face. The debts secured are justly due and owing. The son took possession, although the father was permitted to occupy his old home. The land had been offered before the execution of this deed at ten thousand dollars—about ten dollars per acre—without Ward Parsons being able to find a buyer. The court-house had not then been established on the four hundred and twenty acre tract situate on Shafer's Fork of Cheat river. The payment of all the grantor's debts was provided

for, except that of this plaintiff and others which were denied and contested in litigation then going on, and, as we shall see further on, on well founded grounds of defense *pro tanto*. But, taking into consideration this debts of plaintiff, and other claims then in litigation, the debt of Ward Parsons amounted to about twelve thousand dollars; his personal property had been sold under execution; in other words, he was insolvent. All his property was not sufficient to pay all his debts. *Wolf* v. *McGugin*, 37 W. Va. 552 (16 S. E. 797).

It is urged upon the court that when Ward Parsons became the surety of Barrett in the replevy bond, and the paper company, the assignor of the First National Bank of Cumberland, consented that the personal decree entered in the attachment suit against Barrett, and directing a sale of the property attached and replevined, should be set aside, and that no decree in favor of the paper company should be entered at that term of the court, plaintiff's assignor thereby discharged a lien then existing against the real estate of Barrett, the principal attachment debtor, to the injury of Ward Parsons, the surety, and bound himself not to take any decree during that term. Ward Parsons, the surety, was thereby absolved from all liability. It is conceded that Barrett, the principal, was seised and possessed of real estate situated in this state on the 13th day of August, 1891, when the personal decree was pronounced against him; and that such decree, had it been permitted to stand, would have been a lien on such real estate (section 5, chapter 139, Code) and the surety, Ward Parsons, having the right to pay, or being compelled to pay, the same, would be substituted to the judgment (decree) creditor's lien against Barrett's land for reimbursement; that the replevy bond was executed by Ward Parsons on the 15th day of August, 1891, and that the bond was only given for the release of the personal property attached, as it recites, and concludes as follows: "Now, therefore, if the said W. A. Barrett, Jr., shall perform the decree of said court in said cause, then this obligation shall be void; otherwise it shall remain in full force." On the 17th day of August, 1891, the attachment debtor and creditor went into court, and without the knowledge or

consent of Ward Parsons, the surety, by their own agree-
ment and consent caused not only the setting aside of the
order of sale of the personal property, which was right
enough, but set aside the personal decree which bound
Barrett's land, and consented that none other should be
entered during that term.    The liability of a surety is
*strictissmi juris.*   He has a right to stand on the letter of
his contract.    His liability is limited by its terms, and can
not be extended by implication beyond what the reasonably
necessary import of his language requires and fairly com-
prehends.    See Murfree, Off. Bonds, § 710, and authorities
cited, and Id. c. 21; *Leonard* v. *County Court*, 25 W. Va. 45;
*Rigg* v. *Parsons*, 29 W. Va. 522, 527 (2 S. E. 81); *Poling* v.
*Maddox*, 41 W. Va. 779 (24 S. E. 999); *Glenn* v. *Morgan*, 23
W. Va. 467.   If the creditor deprives the surety of any
right which he would have had against the original debtor,
the surety is discharged.    5 Wait, Act. & Def. p. 227, and
cases.   See 2 Bart. Law Prac. 1080, note; 1 Bart. Ch. Prac.
p. 454; 24 Am. & Eng. Enc. Law, 854 *et seq.*; *Rees* v. *Berring-
ton*, 2 White & T. Lead. Cas. Eq. pt. 2 p. 1890.    The language
of this replevy bond plainly referred to the performance by
Ward Parsons, the surety, of the personal decree which had
already been entered against Barrett, the principal debtor;
and that was for the payment of the full debt—all the cred-
itor could ask; or perhaps to perform all future decrees in
that behalf that might be properly entered.    But it was on
the condition that the creditor should not, without Parsons'
knowledge and consent, deprive Parsons of the right which
he then had to be subrogated to the plaintiff's judgment
lien against Barrett's land, on the payment by him of such
decree.   What was the effect of the creditor's agreement
that no other decree should be entered in the cause in favor
of plaintiff at that term of the court we deem it unnecessary
to consider.   It is enough to say that the one which had
been entered before the giving of the replevy bond, and
which was a lien if left to stand, was set aside by the plain-
tiff, and none other was entered to take its place.    The
order of sale of the personal property attached was only
a method of executing the decree, and the surety, by
necessary implication under his contract and by the

terms of the statute, agreed that the order of sale should be set aside, and the personal property be released from the attachment, and given up to the debtor; but he did not consent or agree to the setting aside of the judgment, and the destruction of the lien thereof against the debtor's land. See, generally, *Humphrey* v. *Hitt*, 6 Gratt. 509; *Shields* v. *Mahan*, 9 W. Va. 483; *Knight* v. *Charter*, 22 W. Va. 422; *Glenn* v. *Morgan*, 23 W. Va. 467; *McKenzie* v. *Wiley*, 27 W. Va. 658. Here the creditor has, by having the decree set aside, taken from the surety the equity of subrogation to the lien on Barrett's real estate, which was incident to the decree. But plaintiff alleges in his bill that the Potomac Paper Company, its assignor, sued defendant Ward Parsons on the replevy bond at law; that the defendant pleaded *inter alia*, that the plaintiff had, without defendant's knowledge or consent, set aside his decree and taken away and destroyed the lien, to which he had a right to be subrogated on payment of the decree; that on this and other pleas the issues were made up, and by consent of parties the trial thereof submitted to the court in lieu of a jury, and the court found for the plaintiff, and rendered judgment against defendant Parsons on the finding; that such judgment still stands in full force and effect, was rendered by a court that had jurisdiction of the parties and of the subject-matter, and that it is *res judicata*. The controversy is thus put to rest, and can not again be brought in issue in this suit. But defendant Ward Parsons replies that the plea put in by him and passed upon by the court of law was in this state one of exclusive, equitable jurisdiction; that the common-law court could not take cognizance of his equitable plea, and therefore he is not bound; and this is the view taken in *Poling* v. *Maddox* (decided at this term) 41 W. Va. 779 (24 S. E. 999). There is no statute which authorizes the reception of such plea in this state in a suit at common-law. It is not comprehended within the letter or the spirit of section 5 of chapter 126 of the Code; and on turning to the plea filed in the suit at law we find no amount of damages or loss sustained by reason of the discharge of the judgment set forth or relied on. And it seems to be settled that, if the party grounds his claim

for relief on the fact that the creditor has released or relinquished some security for the debt which he had acquired, the surety to that extent will be released from his obligation. *Knight* v. *Charter*, 22 W. Va. 422. In such case, if the creditor, without the consent of the surety, release any lien which he may have on the property of the principal for the security of the debt, the surety will be discharged *in toto* or *pro tanto*, accordingly as the value of the property released was equal to or less than the amount of the debt. *McKenzie* v. *Wiley*, 27 W. Va. 658, 661; *Baker* v. *Briggs*, 8 Pick. 121.

By Acts 1891, p. 353, c. 123, a very important and far reaching clause was added to section 2 of chapter 74 of the Code of 1891 (page 649). Appellee contends that this amendment has reference to conveyances made by insolvent debtors seeking to give a preference, but that it does not apply to a case like this, where the conveyance is charged to be fraudulent. But I do not think the statute in question can be so construed as to be given so limited an application. The statute provides, in substance, that, where an insolvent debtor gives or attempts to give any creditor a preference, such preference shall be void, and the conveyance, *etc.*, shall be taken and held to be made for the benefit of all the creditors, and, so far as necessary, the grantee is to be treated as a trustee, and the property transferred is to be applied upon the debts, and paid to the creditors of the insolvent debtor *pro rata*, with certain exceptions specified; and the conveyance of the insolvent debtor must therefore be dealt with by the court as required by section 2 of chapter 74, whether such gift, conveyance, *etc.*, be *bona fide* or fraudulent in law or in fact. (1) If the sale or conveyance was *bona fide*, and for a price equal to the full value of the property, and the court has control of the proceeds, the preference will be set aside, and the proceeds will be applied to the debts, and paid to the creditors as required by the statute. (2) If the sale is *bona fide*, but the price is not substantially equal to the then full value of the property, a sale will be made by the court, so far as may be necessary to avoid the preferences and secure the rights of all the creditors. (3) If the sale or conveyance is fraudulent, and the debtor is insolvent, and gives such inhibited

preference, then the sale or conveyance will be set aside, and a resale made, so far as may be required to pay the honest claims against the insolvent fraudulent debtor. (4) And it must follow in such cases that the former rule in equity of rewarding the diligence of the creditor who first assailed the fraudulent deed of the insolvent debtor with a preference over the other creditors must give way to the statute as inconsistent therewith as thus amended. See *Wolf* v. *McGugin*, 37 W. Va. 522 (16 S. E. 797); *Kurner* v. *O'Neil*, 39 W. Va. 515 (20 S. E. 589); *Refining Co.* v. *Quinn*, 39 W. Va. 540 (20 S. E. 576). This equitable rule of rewarding the diligence of the first assailant of the fraudulent deed of the insolvent debtor sometimes led to such hardship, especially where the deed had to be held to be fraudulent on its face, that the preference given the vigilant assailant was sometimes worse than the fraud. Such cases were, no doubt, in the eye of the lawmaker.

Again, it is said that it was error to hear the cause and enter the decree complained of until the real estate of the principal debtors had been exhausted. "While it is true that the sureties as well as their principal are all bound by the complainant's judgment, and he has the undoubted right to resort for satisfaction to the property of each and all of them, in equity, in a suit in which all the parties are alive and before the court, the court will respect the equities of the parties *inter sese*, and administer them upon the principles peculiar to the forum as far as that can be done without too great delay, and without prejudice to the rights of the creditor. The principal debtor's land should first be subjected to the exoneration of the lands of the sureties." *Horton* v. *Bond*, 28 Gratt. 815, 825. "And where all the sureties are before the court the entire burden should not be thrown upon one of them." *Gentry* v. *Allen*, 32 Gratt. 254, 261.

The record shows attachments levied on and proceedings against several large tracts of land situate in this state as the property of the principal debtor, but there is nothing to show their condition, or what they might bring to the credit of this cause, without unreasonable delay. We can only conjecture from brief of counsel that some of these

creditors have suits pending for that purpose. I think that the record sufficiently shows that the debtor, Ward Parsons, at the date of this deed, did not have property enough to pay all his debts; that the eight thousand dollars, the consideration of the conveyance, was not the full value of the property conveyed to defendant Lemuel W. Parsons; and that he should be treated as a trustee for the benefit of all the creditors to the full extent of the value of the property, to be ascertained by a sale thereof under the direction of the court, not selling, however, the parcels of land mentioned in the decree of 21st day of June, 1895, as severally sold to W. B. Irwin and others, but dealing with them as provided for in that decree, and also excepting from sale lots No. 99 and 100, previously sold Tabitha Ryan. In other words, I see no objection to this decree, as far as it goes, after the debt of two thousand and nine hundred dollars shall be restored to its proper place as a *bona fide* debt. But I may have overlooked something, or lapse of time and change of circumstances may call for some modification in the interest of all the parties. It may, with such end in view, answer some useful purpose, and in no event can cause harm, to set aside the decree of 21st day of June, 1895, so that the court below may, with or without any order of reference, bring the cause to a final hearing in accordance with the requirements of section 2 of chapter 74 of the Code, and of the directions here given.

Reversed and remanded.