# CHARLESTON.

WOLF *et al. v.* McGUGIN *et al.*

Submitted January 16, 1893. --Decided January 28, 1893.

1. INSOLVENCY.
   A person is insolvent within the meaning of section 2, c. 74, Code 1891, when all his property is not sufficient to pay all his debts. (p. 556.)

2. INSOLVENCY—PREFERENCE—NOTICE.
   Notice of such insolvency on the part of a creditor receiving a preference in the estate of an insolvent debtor is not necessary to avoid such preference under said section. (p. 559.)

3. INSOLVENCY—PREFERENCE.

> The form of the instrument or act, by which the preference forbidden by the statute, whether by deed of trust, assignment or sale is accomplished, is not material, so that it results in such a preference, it being the design of the statute to prevent an insolvent debtor from devoting his property to work a preference among his creditors. (p. 561.)

4. INSOLVENCY—PREFERENCE.

> Where it is necessary to do so to defeat such preference, and apply the debtor's estate to the ratable payment of all his debts, a court of equity will take charge of the property transferred or charged contrary to the statute, and administer it for such ratable payment to all creditors. (p. 562.)

5. DISMISSION—INJUNCTION—CONSTRUCTION OF STATUTES.

> Under section 13, c. 133, of the Code, as it reads in the edition of 1891, when an injunction is wholly dissolved, the bill does not stand dismissed as of course, but it requires an order of dismissal. (p. 564.)

MERRICK & SMITH for appellants:

I.— *Who is a creditor?*—2 Big. Fraud, 143 note 4, 145 note 1, 146 notes 1, 2, 3, 4, 5 and 6; 128 Mass. 102; 37 N. J. L. 300; 2 Root (Conn.) 261; 28 Conn. 103; 9 Cush. 482; Bov. Law Dict.; And. Law Dict. 291–2; 11 Bush (Ky.) 353.

II.—*McGugin was unable to pay his debts in the ordinary course of business and was therefore insolvent.*—11 Am. & Eng. Ency. Law 168; 112 Pa. St. 294; 36 Minn. 364; 16 Wall. 277, 308; 9 N. Y. 594; 2 Big. Fraud 196 note 1; 5 Lawy. Rep. Ann. 765 note; And. Law Dict. 562; 13 Wall. 47; 21 Wall. 338; 125 U. S. 90; 94 U. S. 557.

III.—*Not necessary that the purchasing creditors should have notice of insolvency.*— Code c. 4, s. 2.

IV.—*Any facts which would put a prudent man on inquiry would be notice of insolvency.*—2 Big. Fraud 603 notes 3 and 4; 49 N. W. Rep. 191; 95 U. S. 342; 94 U. S. 557; 16 Wall. 308; 13 Wall. 40; 54 Md. 362; 119 Mass. 245; 101 Mass. 262.

W. A. PARSONS for appellees:

I.—*Insufficiency of verification.*—10 Am. & Eng. Ency. Law 1004, & n. 4; 5 W. Va. 579; 12 W. Va. 667, 679.

II.—*Bill not good.*—6 Am. & Eng. Ency. Law 754, n. 4; 5

W. Va. 579; 12 W. Va. 667; 10 Am. & Eng. Ency. Law 1002, n. 2.

III.—*Appellants fail to show themselves creditors as against Armstrong and Brown.*—16 W. Va. 108, 154, 155; 20 W. Va. 169; 7 W. Va. 474.

IV.—*McGugin's answer can not be read against Armstrong and Brown.*—2 Wheat. 380; 6 Cranch 8; 9 Cranch 153; Matthew's Guide 53; 9 Wheat. 738.

V.—*Fraud per se.*—29 W. Va. 702; 22 W. Va. 356; 25 W. Va. 596, 597; 32 W. Va. 34.

VI.—*Fraud in fact.*—22 W. Va. 356.

VII.—*Right of debtor to make preferences prior to amendment.*—22 W. Va. 356.

VIII.—*What not general assignments, what not preferences, sales.*—1 Am. & Eng. Ency. Law 846; 76 Ala. 295 and cases cited in n. 1; 1 Am. & Eng. Ency. 846; Burrill on Assignments, § 161, n. 3, 162; *Idem*, § 3 and 4; 7 Pa. St. 449; 26 Pa. St. 92; 60 Am. Rep. 783; 3 Sumn. 350; 5 Neb. 531; 11 So. Rep. 347; 39 Am. Rep. 481; 28 Am. Rep. 704; 77 Am. Dec. 137; 84 Am. Dec. 508; 15 S. E. Rep. 48.

IX.—*As to who are creditors.*—5 Am. & Eng. Ency. 179.

X.—*Armstrong and Brown stand in shoes of Oil Well Supply Co., and Bk.*—85 Ky. 574; 11 Bush 353; 44 Fed. Rep. 467; 9 S. Ct. 309.

XI.—*McGugin's admissions of indebtedness to appellants not received against Armstrong and Brown.*—1 Greenl. § 190.

XII.—*Amendment not to prevent fraud.*—2 S. E. Rep. 322.

XIII.—*Can not attack as fraudulent and as giving preferences in same suit.*—2 S. E. Rep. 325.

R. F. FLEMING for appellees ARMSTRONG and BROWN:

I.—*A conveyance made in fraud of creditors to a creditor, who is a bona fide purchaser, is good; and such purchaser is protected to the extent of money advanced (i. e. paid, or that he has bound himself to pay).*—10 Fed. Rep. 125 (N. Y.).

II.—*Where there is nothing on the face of the deed to indicate that it was made for any other purpose than in good faith, &c. proof is required, &c.*—6 Sup. Ct. Rep. 982.

III.—*The subsequent employment of McGugin not evidence of fraud.*—10 Fed. Rep. 101, p't 6 (N. Y.).

IV.—*There is nothing suspicious or inconsisteut with honesty and fair dealing in a provision in a deed of trust allowing the grantor to continue to sell under the supervision and control of the trustee.*—23 Fed. Rep. 421 (North Carolina).

V.—*However, the trustee not being a party to the bill of complaint as modified and acted on, the deed of trust can not be attacked as fraudulent.*

BRANNON, JUDGE:

On August 20th, 1891, E. R. McGugin made a deed, by which he sold to J. L. Armstrong and E. W. Brown a stock of goods, with which McGugin had been carrying on the business of a hardware merchant, and selling wagons, buggies, *etc.*, the deed reciting the consideration to be two thousand and seventy two dollars, and that for it Armstrong and Brown were to discharge three negotiable notes amounting to one thousand four. hundred dollars, which had, prior to the date of said deed, been made by McGugin to said Brown, and indorsed by Brown, and three notes of same date with said deed of two hundred and twenty four dollars and fifty three cents each, made by McGugin to said Brown and Armstrong, and indorsed by them to the Oil Well Supply Company in discharge of a debt due it from McGugin.

Afterwards, on September 7, 1891, Wolf, Lane & Co. presented their bill to the judge of the Circuit Court of Jackson county, setting out that McGugin owed them a debt existing prior to the date of the sale of said property; that when he made said sale he was insolvent; that said deed of sale gave preference to the creditors therein named over the plaintiffs and other creditors of said McGugin, and was therefore void; and praying that said Brown and Armstrong be enjoined from selling the goods and other property transferred by said deed, and that a special receiver be appointed to take charge of and sell the same, and that said deed of sale be avoided so far as it gave preference of payment to the notes in it specified over the debts of plaintiffs and other creditors; that the three first-mentioned notes be disregarded in distribution of the proceeds of the goods, and Armstrong and Brown be required

to account for the goods sold, and that the whole be applied *pro rata* to all debts of McGugin. An injunction was granted, and a special receiver appointed, but afterwards an order was made dissolving the injunction and discharging the receiver, but going no further; and from this action the plaintiffs appeal.

The plaintiffs contend that their suit is sustained by that clause of section 2, c. 74, of the Code (Ed. 1891) that "every gift, sale, conveyance, assignment, transfer or charge made by an insolvent debtor to a trustee, assignee or otherwise, giving or attempting to give a priority or preference to a creditor or creditors of such insolvent debtor, or which provides or attempts to provide for the payment, in whole or in part, of a creditor or creditors of such insolvent debtor to the exclusion or prejudice of other creditors, shall be void as to such priority, preference, or payment so made or attempted to be made; and all such gifts, sales, conveyances, assignments, transfers, and charges shall be deemed void as to such priority, preference, or payment; and every such gift, sale, conveyance, assignment, transfer, or charge shall be deemed, taken and held to be made for the benefit of all the creditors of such debtor, except as hereinafter provided; and all the estate, property, and assets given, sold, conveyed, assigned, transferred, or charged as aforesaid shall be applied upon the debts and paid to the creditors of such insolvent debtor *pro rata.*"

At common-law a man though insolvent, until a lien became fixed in some way upon his property, might without fraud convey or transfer it in trust and prefer one creditor over another, even though it left no estate to pay other creditors. *Harden* v. *Wagner*, 22 W. Va. 356; *Skipwith's Ex'r* v. *Cunningham*, 8 Leigh 271. But the statute above referred to makes a change from the common-law rule as to insolvent debtors. The power to give preference among a debtor's creditors is taken away from insolvent debtors by the statute, and therefore, to fall under it, the person giving the preference must be insolvent.

Who, then, is insolvent within the meaning of the statute? Under bankrupt and insolvent acts considerable difference of opinion has existed as to the definition of in-

solvency. It is not a matter capable of exact definition by general rule for all cases, as each case must rest on its own facts, and on the statute or purpose for which we would define it. A man might be, under such laws, insolvent, if doing business in a commercial city, and not so if in a country village; and a trader might be branded as insolvent on account of defaults for which a farmer would not. Insolvency, in common parlance, is the inadequacy of one's property to pay his debts; while in another sense, for purposes of the bankrupt laws, it is the state of a person who, from any cause, is unable to pay his debts in the ordinary and usual course of trade. Burrill, Assignm. § 62; *Toof* v. *Martin*, 13 Wall. 40, 47 ; Wait, Insolv. Corp. § 29 ; 11 Am. & Eng. Enc. Law 168; Bump. Bankr. 398, 793.

Which of these two definitions shall we apply to the statute in question? I think we must apply the former; that is, that to render a person insolvent under the statute he must be one whose whole property will not pay all his debts. To say that simply because a party, though a trader, fail to meet all his obligations when due, though his assets be more than ample to pay them all, would enforce a rigor and harshness hardly contemplated by the legislature in the enactment of the clause of the statute cited. It was not the design to place such a person in the state of insolvency demanded by the provision. The plain purpose of the act is that, when a person comes to such a degree of financial embarrassment that his property is not equal to the full payment of his debts, his property shall not by his act go to some debts to the prejudice of others, but shall go to all ; and, if he does an act devoting it to them, they must share ratably in the benefit and loss. But this is meant to apply only to one so situated.

I have just found the case of *McArthur* v. *Chase*, 13 Gratt. 683, which I think sustains us in applying such definition of insolvency to the present act. There the act in relation to limited partnerships was, as regards the point now under consideration, very much analogous to the clause we are construing. It provided that every sale, assignment or transfer of any property by such partnership, when insolvent, with intent to give preference to any creditor, should

be void as to the creditors ; and the court held that insolvency under it meant "that the partnership has not sufficient property and effects to pay all its debts." The opinion refers to the two definitions of insolvency above given, and applies the one which we apply to this statute. I have had some question whether there might not be, under this statute, a distinction as to the definition of insolvency between a trader and one not such ; but I think no such distinction can be drawn under this act.

Then comes the question whether, under this definition, McGugin was insolvent. On July 18, 1891, he was under necessity to raise money, and he made three notes of five hundred dollars each, and procured Brown to indorse them, by giving a deed of trust on his stock of goods to secure them. Early in August he confessed several judgments in favor of creditors. Shortly afterwards the Oil Well Supply Company filed a bill to recover a debt of nearly seven hundred dollars, due from McGugin, attacking said trust, and procured the appointment of a receiver to take charge of the goods; and the store was closed, and his business stopped.

He could not extricate himself by payment. He applied to Armstrong to indorse notes for an amount sufficient to pay this debt, but he declined. Then he proposed and effected the sale in question in this suit, and only by and through it, the sale of his stock in trade, the sole means of carrying on his chief, I may say, his only, business for support, could he adjust this debt; and McGugin still held position to conduct the business at fifty dollars per month, that fact showing that the store was his chief dependence for support, and why he was anxious to again open it.

Armstrong, one of the purchasers, who was cashier of the bank, tells us that often drafts were drawn on McGugin and sent to the bank for collection, and that some would be paid, and others returned unpaid ; and at the time of the sale he says there were two notes on McGugin—one for one hundred dollars the other one hundred and twenty five dollars—in the bank unpaid, and that he thinks other notes were there for collection.

On August 11th, before the sale, McGugin gave to the agent of the Oil Well Supply Company an itemized state-

ment of twelve debts in favor of as many persons, including three confessed judgments aggregating five thousand four hundred and nine dollars; and besides he owed a five hundred dollar note to Armstrong, and he stated his assets at two thou-and eight hundred dollars. He was talking with a creditor asking payment of a debt, and it would hardly be supposed he would, under such circumstances, underrate his assets, or overstate his liabilities. Of these assets six hundred dollars consisted of oil leases, which the evidence tends to show doubtful or worthless.

On 18th August we find an officer with an execution against McGugin for one hundred and four dollars only and costs, calling on McGugin for payment, or property to levy upon, and McGugin informing him that he was unable to pay, and that he had sold his goods to Armstrong and Brown, and had no property out of which the execution could be satisfied; and the officer could find no property subject to the execution. On the assessor's books of 1891 he is charged with only fifty dollars furniture and two thousand dollars for stock of goods. There is nothing contrary to this, except a mere general statement of McGugin to Armstrong and Brown, as they depose, some time before the sale, that he had three thousand dollars assets beyond his liabilities. McGugin does not give evidence to sustain this pretension. He was not even examined; and after this statement to them he reduced his property by sale of a store at Spencer. From the facts and circumstances above set forth, from the features of the case throughout in respects which I can not detail here, it is clear that McGugin was insolvent when he made this sale.

It is urged that though McGugin may have been insolvent, yet Armstrong and Brown had no notice of it. That, in my opinion, if a fact, would be immaterial. The statute contains no such element. We can not insert it by construction. If the party is insolvent, that is enough to avoid the preference. The party dealing with the seller must inquire as to the *status* of the party with whom he deals. The public law tells him this.

A statute of New York rendered invalid transfers of preference by insolvent corporations, and made parties receiv-

ing the effects liable to account for them, and the court held that knowledge of the insolvency need not be brought home to the party. The court said : "The statute declares the transfer and payment void in case of actual or contemplated insolvency, if made with intent to give preference to creditors, irrespective of the knowledge of the party receiving the transfer or payment. It is not a question of fraud, or an intent on the part of the creditor to obtain a preference, but a question as to the actual insolvency or contemplated, followed by actual, insolvency of the corporation, accompanied with an intent on the part of its directors to prefer creditors;" * * * "The statute is not that every person receiving the conveyance or payment, with knowledge of the insolvency, shall account therefor, but that every one receiving —that is, with or without knowledge of the pecuniary condition of the company—shall account," * * * "and the courts ought not to ingraft on the statute and on the liability of the parties limitations and qualifications which the legislature has intentionally omitted." *Brouwer* v. *Harbeck*, 9 N. Y. 589.

But be this as it may, I think, if the purchasers did not actually know of their neighbor's insolvency, yet they both had ample knowledge of facts and circumstances to put them on inquiry. Armstrong had perhaps more knowledge than Brown. Notice to one joint purchaser may not be notice to others, but Brown says he entrusted the consummation of the sale wholly to Armstrong, making him his agent, and notice to an agent is notice to his principal. Both knew of the suit closing the store, and the large deed of trust nearly covering its value, given Brown. Brown knew of McGugin's press for money, as he had indorsed notes for the large sum of one thousand five hundred dollars to relieve him. He knew of the Oil Well Supply Company debt of nearly seven hundred dollars. Armstrong knew of notes and drafts in bank for other debts unpaid and overdue. Armstrong a very experienced merchant, had been in the store twice a week for a long time prior to the sale, and knew the limited value of the stock. He knew McGugin owed five thousand dollars. Both were first asked by McGugin to indorse notes to raise money to lift the

Oil Well Supply Company's suit, but declined. Then the proposition of sale was made to them. They said they would purchase, if they could do so safely without trouble with creditors, and even took care to consult with lawyers as to this point. Why do this if they had no reason to doubt his solvency?

The Supreme Court of the United States, in common with all courts, when speaking of notice to persons of a fact, has said that if a party be insolvent, and means of knowledge on the subject are at hand, and facts and circumstances were known to a creditor securing a preference such as ought to have put him, as a prudent man, upon inquiry, it is a just rule of law to hold "that he had reasonable cause to believe that the debtor was insolvent, if it appear that he might have ascertained the fact by reasonable inquiry."

Ordinary prudence is required of a creditor under such circumstances, and if he fails to investigate when put upon inquiry he is chargeable with all the knowledge it is reasonable to suppose he would have acquired if he had performed his duty. *Buchannan* v. *Smith*, 16 Wall. 308; *Toof* v. *Martin*, 13 Wall. 40; *Dutcher* v. *Wright*, 94 U. S. 557. Such is the general law of notice. Opinion in *Graff* v. *Castleman*, 5 Rand. (Va.) 207; 2 Minor, Inst. 889; Wade Notice, § 38; 16 Am. & Eng. Enc. Law, 795. Though not certain that the question of notice is at all relevant as to Armstrong and Brown, I have adverted to it, as the point is made in argument.

It is contended that the statute under discussion applies only to general assignments for creditors, not to a transfer of a specific property for particular debts. The language of the statute will not justify this contention. It is very broad: "Every gift, sale, conveyance, assignment, transfer, or charge made by an insolvent debtor to a trustee, assignee, or otherwise, giving or attempting to give a priority or preference," *etc.* It means any act done by an insolvent debtor devoting any part of his property in any way, so that its legal effect is to give preference to one creditor over another. No matter about the form of the instrument. No matter whether a general assignment to an assignee or trustee, or a partial assignment to the creditor, or to any one

for him, whether named expressly trustee or not, so it have the legal effect of giving such preference. See *Appeal of Miners' Nat. Bank of Pottsville*, 57 Pa. St. 193, 200.

The appellees say that this is not a deed of trust or assignment to secure creditors, and to be regarded as an act inhibited by the statute, but only a sale by McGugin to Armstrong and Brown; that, though Brown may be regarded a creditor provided for in said deed or transfer, certainly Armstrong is not, and his right (indeed, Brown's also) under it can not be affected by the statute.

Now, it is true that, so far as Armstrong and Brown, as purchasers, are concerned, the transfer not being vitiated by fraud in fact, the deed of transfer may not be void, but passes title to the property to them. We must note that the statute does not expressly avoid the act of transfer, but it does avoid the preference. Now, if the transfer were by deed of trust to a trustee for the preferred creditors, or if it were direct to a creditor, equity would seize upon the property, and appropriate it by sale to all the creditors; but where, as in this case, the sale is to an absolute purchaser, with a provision that he devote the purchase-money to preferred creditors, we ought to regard the transfer valid to pass title, and hold only the purchase-money liable to all creditors.

The statute does say that all the property sold shall be applied upon all debts *pro rata*, but a preceding clause declares the sale void as to the preference, and not wholly void, which is the vital feature of the enactment; and the other clause will be effectuated if the court so give relief as to accomplish the purpose of defeating the preference and enforcing a ratable distribution among all debts.

I shall not say that, where necessary, even when, as in this instance, the transaction is in the form of a sale, the court may not seize on the property, and defeat the title of the purchaser, if necessary to accomplish the vital purpose of the statute, the avoidance of the preference, and the ratable distribution.

A party purchases property liable to all creditors. He agrees to pay the purchase-money only to some of them as a part of the terms of sale, thus diverting the property

from the proper course.    It is not simply and only a sale, but a sale for a purpose inhibited by the statute.    Can he complain that the court rescues the property, and applies it where the law says it must go?    But in the present case no inadequacy of price is suggested in the sale, and no re-sale would bring a better price, so far as appears, and why should the court sell over again when an advantageous sale has already been made?    There is no hint of insolvency of the purchasers; in short, no circumstances whatever calling upon a court of equity to annul the sale itself.    Hence there was no error in dissolving the injunction and discharging the receiver.    But while this is so, the preferences worked by the deed of sale must be defeated, and the purchasers held liable for the full purchase price, to be devoted *pro rata* upon all just debts of McGugin.

There can be no question that the owner and indorser of the note of four hundred dollars, given for a balance of one of the five hundred dollar notes secured in the deed of trust of July 18, 1891, and the two notes of five hundred dollars each, therein secured, were creditors of McGugin.    Brown was payee and creditor in those notes.    And there can be no doubt but that the Oil-Well Supply Company was creditor, as also Brown as indorser, by reason of the three notes of two hundred and twenty four dollars and fifty three cents each, specified in said deed.    They were given for an antecedent debt against McGugin, for which said chancery suit had been brought by said supply company against Mc-Gugin.    Indeed, that antecedent debt yet continued, if that be material, for the giving of the new notes did not discharge it.    The supply company holds the old debt and the notes, and is preferred in the sale.    Equity looks at the substance, and says, especially for the purposes of such a question as this, that it is the same debt.    *Farmers' Bank* v. *Mutual Ass'n Soc.*, 4 Leigh, 88; *Poole* v. *Rice*, 9 W. Va. 73; *Dunlap's Ex'rs* v. *Shanklin*, 10 W. Va. 662; *Bank* v. *Good*, 21 W. Va. 455.

And I consider Brown and Armstrong as creditors secured by this preference as indorsers of the three notes. When the creditor is given preference, the indorser or surety is likewise preferred for his indemnity.    A deed of trust

or other security for the one operates in law to the security of the other, as has been often held. .A person contingently liable as surety or indorser is certainly a creditor of the principal debtor. *Hutchinson* v. *Kelly*, 1 Rob. (Va.) 136; Bump, Fraud. Conv. 503. No matter is it if Armstrong were not a creditor. The debts are preferred. As indicated above, my opinion is that, if a person purchase property of an insolvent debtor, not for cash, but agree as a part of the transaction to devote the consideration to pay certain creditors of the seller to the exclusion of others, that is an act falling under the bar of the statute, though such purchaser be not a creditor. He is a party to the very act prohibited—that of applying the insolvent's estate to certain preferred creditors.

The bill was not dismissed, and yet remains in court for final action upon its matter, as the dissolution of the injunction did not, as of course, consequentially dismiss it, since section 13, c. 133, of the Code, providing that when an injunction is wholly dissolved the bill shall be dismissed, unless sufficient cause be shown against it, requires an order of dismissal; and it does not stand dismissed as of course, as it would under that section as it was in the Code of 1868 as originally enacted, since it directed that the bill "stand dismissed of course."

Even were the section now as it once was, this bill would not stand dismissed as of course, as that was the case under that section only where the bill contained matter only relating to the injunction, and necessarily failed with its dissolution, and not to bills, like the one in this case, containing other matters, and calling for relief separate from the injunction, and further than and independent of it. *Alford* v. *Moore's Adm'r*, 15 W. Va. 597; Bart. Ch'y Pr. 464.

The cause must go on to ascertain all debts of McGugin, and apply the sum which Armstrong and Brown agreed to pay *pro rata* among them. They seem to have paid two of the notes, but they must be held for the whole sum for ratable distribution, charging the creditor who received the same to reimburse them, beyond their proper share, if they have been paid beyond it.

I do not see why the creditors holding the notes specified

· in said deed, including the Oil Well Supply Company, were not made parties. . The bill attacks their rights, and Armstrong and Brown were entitled to have them made parties. They must be yet made parties.

The order dissolving the injunction and discharging the receiver is affirmed, and the cause remanded, that it may proceed for the purposes and upon the principles herein indicated, and further according to equity.

ORDER AFFIRMED.    CAUSE REMANDED.

# CHARLESTON.

