## CHARLESTON.

Merchants & Co *v.* Whitescarver *et al.*

Caldwell & Peterson Mfg. Co. *v.* Same.

Submitted June 24, 1899—Decided December 9, 1899.

1. Insolvent Sale—*Creditor—Bona Fides.*

A mercantile firm, although indebted to insolvency, may sell its stock of merchandise to a disinterested party, and receive his notes in payment therefor, payable to its order, and assign one or more of said notes in payment of a debt owed by it to a *bona fide* creditor; and such transfer will not be void, under section 2 of chapter 74 of the Code, as amended by chapter 4 of the Acts of 1895. (p. 366-367).

2. Purchaser—*Note—Prior Debt.*

Such purchaser may also, as a part of the purchase money, make a note payable directly to a bank that holds the note of said firm for a *bona fide* pre-existing debt, and substitute such note for the note of said firm held by the bank. (p. 366).

Appeals from Circuit Court, Upshur County.

Bills by Merchant & Co. against Whitescarver & Brake and others, and by the Caldwell & Peterson Manufacturing Company against the same defendants. From the decrees rendered, the plaintiffs and others appeal.

*Affirmed.*

C. C. Higginbotham, for appellants.

G. M. Fleming and W. H. Fisher, for appellees.

English, Judge:

George H. Whitescarver and Loomis Brake, under the firm name of Whitescarver & Brake, engaged in the hardware business in the town of Buckhannon, West Virginia, became insolvent and indebted to a number of firms and individuals. On the 23rd of July, 1895, said firm sold its stock of hardware to C. W. McCormick for two thousand three hundred and eighty-eight dollars and sixty cents, no part of which purchase money was paid in cash, but Mc-

Cormick executed therefor four notes,—one for five hundred dollars, dated July 23, 1895, payable two years after date, to the order of Whitescarver & Brake, with interest from date, signed by said McCormick and J. E. Newlon, which note was indorsed by Whitescarver & Brake, and delivered to T. J. Farnsworth in satisfaction of a note for five hundred dollars, then due, held by Farnsworth against said firm, on which Hyre Brake was surety; another for five hundred dollars, payable to the Buckhannon Bank in four months, executed by McCormick, J. E. Newlon and W. H. Fisher, was accepted from said firm in lieu and satisfaction of a note for five hundred dollars, held by it against said firm, and signed by Hyre Brake as surety. The First Natonal Bank of Grafton also held a note for seven hundred and fifty dollars, with interest thereon from August 2, 1895, executed by G. H. Whitescarver, Loomis Brake, G. M. Whitescarver, and J. T. Whitescarver, and, as part of said purchase money, on July 24, 1895, C. W. McCormick executed a note to said National Bank of Grafton for seven hundred and fifty dollars, with J. E. Newlon and Sarah McCormick as sureties, and with it took up said Whitescarver & Brake note held by said bank. On August 16, 1895, said firm conveyed to W. S. O'Brien all of its claims, open accounts, and choses in action to secure the creditors of said firm *pro rata*. Merchant & Co., a corporation, filed its bill in the circuit court of Upshur County, claiming that it had a judgment against said firm for fifty-nine dollars and eighty-three cents, dated August 13, 1895; alleged the above facts in regard to the sale of said goods by Whitescarver & Brake to McCormick, and the transfer of the notes received therefor; stated the names of other parties who had obtained judgments against said firm, and the amounts; and mentioned, also, the transfer by the firm of its notes and accounts, many of them worthless, to W. S. O'Brien, trustee; and prayed that the Buchkannon Bank and Thomas J. Farnsworth might be required to refund the money received by them, and the same be applied *pro rata* to debts of said firm. Merchant & Co. also filed an amended bill, alleging additional facts, mentioning other judgments that had been obtained against said firm, and prayed that the

Buckhannon Bank, said Farnsworth, the Upshur County Building and Loan Association, and the First National Bank of Grafton be required to deliver up the money received by them, and the same applied *pro rata* to the debts of such of the creditors of said firm who might come in and contribute to the expense and cost of the suit. The Caldwell & Peterson Company, a corporation, also filed its bill, claiming and describing a judgment obtained by it against said firm, alleging the same to be insolvent; that it was collecting its debts, and not applying the proceeds to the payment thereof; and prayed that said firm be enjoined from assigning or collecting any of its assets, or disposing of its estate, real or personal; and that a receiver might be appointed to take charge of said estate, collect the assets, dispose of the property, and apply the proceeds *pro rata* to the firm's said debts. On August 17th an injunction was granted, and on the 31st a receiver appointed. Numerous answers and petitions were filed, setting up judgments and claims against said firm, which also filed its answer to the bill of the Caldwell & Peterson Company, denying the material allegations thereof. These causes were heard together, and a reference was made to a commissioner, who was directed to ascertain and report all the property of every description owned by said firm at the time their stock of goods was sold to McCormick, and what disposition was made of said property, as well as all debts owing at the time of said sale. Said commissioner, among other things, reported the debts above mentioned as owed by said firm to T. J. Farnsworth, the Buckhannon Bank, and the First National Bank of Grafton, and the facts above stated as to the notes which had been accepted by said creditors in lieu thereof; but found that the note for five hundred dollars executed by C. W. Mc-Cormick, etc., to Whitescarver & Brake, and assigned to T. J. Farnsworth, the note executed by same to the Buckhannon Bank for five hundred dollars, the note by the same to the First National Bank of Grafton for seven hundred and fifty dollars, and said note executed by same to Whitescarver & Brake, and assigned by them to G. M. Whitescarver, amounted, in the aggregate, to two thousand three hundred and eighty-eight dollars, and that they

were executed by said McCormick in payment for said stock of goods, and were unpaid; which finding was excepted to by the Buckhannon Bank. Merchant & Co. also excepted to said report, because they were entitled to priority of payment out of the two thousand six hundred and fifty-five dollars and fifty-two cents reported as due by said McCormick to said firm over all defendants who failed to file answers requesting to contribute to the payment of costs. The Buckhannon Bank also excepted particularly as to the five hundred dollars represented by the note of McCormick executed to said bank, and accepted as payment of a note for a like amount executed to said bank by said firm and Hyre Brake, and to the reporting of a debt of five hundred dollars and interest against said firm in favor of said bank as a common creditor of said firm, the transaction between the two having been closed by the payment to said bank of McCormick's note for five hundred dollars, with J. E. Newlon and W. H. Fisher as sureties, without fraud or knowledge of insolvency of the debtors on the part of the bank; it not having been a party to the sale of said stock of hardware to said McCormick. The defendant Farnsworth also excepted to said report, so far as it included in the assets of said firm the two thousand three hundred and eighty-eight dollars and sixty cents paid by McCormick for said stock of goods, and particularly the five hundred dollars represented by the note for that amount executed to said firm by McCormick and J. E. Newlon, and assigned by said firm to him, and accepted in settlement of their note for like amount, on which Hyre Brake was surety, and to the reporting of a debt of five hundred dollars and interest against said firm in favor of said Farnsworth as a common creditor of said firm; it having paid its debt to him by the assignment of said McCormick note, on which said Newlon was surety. The First National Bank of Grafton also excepted to so much of said report as affected its interest, and made it liable to refund the seven hundred and fifty dollars which G. H. Whitescarver, J. T. Whitescarver, and G. M. Whitescarver owed said bank, because their debt was a straight loan, not to the firm of Whitescarver & Brake, which was unknown to said bank, but to G. H. Whitescarver and others,

which was paid out of the proceeds of a straight loan to C. W. McCormick, with J. E. Newlon and Sarah McCormick, sureties, and, if any arrangements were made between McCormick and the late firm of Whitescarver & Brake, by which said note was to be paid from the sale of said stock of goods, said Brake was not a party thereto, and not bound thereby, and not, therefore, in any way liable to be required to refund any money paid to it in discharge of said note. The court, by its decree, sustained the above exceptions filed by said two banks and T. J. Farnsworth, and overruled all the other exceptions thereto, subject to certain modifications made by said decree, and confirmed said commissioner's report; and Merchant & Co., Caldwell & Peterson Company, and several other creditors obtained this appeal, claiming, first, that the court erred in sustaining the above-named exceptions to the commissioner's report filed by said two banks and Farnsworth, and in dismissing plaintiff's original bill as to said banks, the Upshur County Building and Loan Association, and T. J. Farnsworth.

Did the court err in sustaining these exceptions? Can we say the creditors of the firm of Whitescarver & Brake are entitled to set aside the transactions mentioned in these exceptions, and share *pro rata* in the proceeds arising from the sale of said merchandise to McCormick? Now, while it may be true that said firm was insolvent at the date of the sale, it is equally true that said two banks and Farnsworth were *bona fide* creditors of the firm, and, if the sale to McCormick had been made for cash, the firm could have taken the money and paid off these debts, and neither the plaintiffs nor any other of their creditors could have recovered it. As part of said purchase money, McCormick, in July, 1895, executed a promissory note, with J. E. Newlon as surety, for five hundred dollars, payable two years after date, to the order of Whitescarver & Brake, with interest from date, which note was duly indorsed by said firm to T. J. Farnsworth, who surrendered to the firm its note for five hundred dollars, then due, on which Hyre Brake was surety. It also appears that the Buckhannon Bank held a note for five hundred dollars against the firm, with Hyre Brake as surety, and in payment

thereof said firm gave it a note for five hundred dollars, payable at the bank in four months, executed by McCormick, J. E. Newlon, and W. H. Fisher, and took up the note so held by said bank. It also appears that the First National Bank of Grafton held a note against G. H. Whitescarver, with J. T. and G. M. Whitescarver as his sureties, which was paid August 2, 1895, by said McCormick, for whom said bank discounted a note for seven hundred and fifty dollars, signed by J. E. Newlon and Sarah McCormick, which note is still held by said bank. G. M. Whitescarver was also security for said firm for the sum of six hundred and thirty-eight dollars, and on July 23, 1895, said McCormick executed his note to the firm for six hundred and thirty-eight dollars, and they assigned the same to indemnify him, as their surety, to the Usphur Building and Loan Association. As I read section 2, chapter 74, Code, as amended by chapter 4, Acts 1895, neither of these transactions can be regarded as void, or such as would entitle the general creditors of said firm to a *pro rata* distribution of the proceeds of said sale, when we consider the concluding words of this section 2, which reads as follows: "Provided, further, that nothing in this section contained shall be taken to effect any transfer of bonds, notes, stocks, securities or other evidences of debt in payment of or as collateral security for the payment of a *bona fide*, debt, or to secure any indorser or surety, whether such transfer is made at the time such debt is contracted or indorsement made or for the payment or security of a pre-existing debt." These debts all seem to be *bona fide* and pre-existing, and the evidence shows that G. M. Whitescarver, to whom the six hundred and thirty-eight dollar note was assigned, was the surety of said firm to the building and loan association for that amount, so that these transactions are brought strictly within the exception or proviso contained in the last clause of said section 2. See *Carr* v. *Summerfield*, (recently decided by this Court) 34 S. E. 804 (Syl., point 4.)

So far as appears, the said sale of stock was made by this firm to a disinterested party, who executed his notes in payment for the same, and, while said firm may have been indebted to insolvency, there were no liens upon the

property sold. They had a perfect right to sell and secure said notes in payment for the same, and under said section 2 the firm could transfer said notes in payment of a *bona fide* debt, or to secure any indorser or surety, whether such transfer is made at the time such debt was contracted or for the payment or security of a pre-existing debt. In the case of *Mack* v. *Prince*, 40 W. Va. 328, (21 S. E. 1014), this Court held that "the good intent of the debtor which must be deduced from the circumstances surrounding the transaction, is involved; and if it reasonably appear from the transaction that he was not endeavoring to give the creditor an undue priority or preference over others, but was simply securing a just debt, then the statute would not destroy the security." So, also, in *Johnson* v. *Riley*, 41 W. Va. 146, (23 S. E. 700), DENT, J., delivering the opinion of the Court, says: "But, notwithstanding his insolvency, * * * he may dispose of his property, without infringing the statute, * * * to a *bona fide* innocent purchaser for value;" and there is nothing in this case which placed C. W. McCormick in any other category. There is no question raised as to the *bona fide* of the notes lifted with said McCormick's notes. Looking at the entire case presented, my conclusion is that the decree complained of must be affirmed.

*Affirmed.*

BRANNON, JUDGE:

I doubt as to the notes made payable to the Buckhannon Bank.