# CHARLESTON.

ARMSTRONG *et al v.* OIL-WELL SUPPLY CO. *et al.*

Submitted January 11, 1900—Decided March 24, 1900.

CONVEYANCE—*Fraud—Notice—Reference.*

The O. W. S. Co., a corporation, brought its suit to enforce its claim of six hundred and seventy-three dollars and fifty-nine cents against its insolvent debtor, M., and to set aside a deed of trust on stock of merchandise made by M. to A., trustee, to indemnify M.'s indorser, B. An injunction was granted, and a receiver appointed. M. proposed to plaintiff that if it would dismiss its suit, and restore the property to his possession, and give him long time on the debt, he would furnish paper, with good indorsers, for amount of its claim. Accordingly the suit was dismissed, the receiver discharged, and possession of the property restored. When this was done, M. sold the stock of goods to A. and B., in consideration of two thousand and seventy-two dollars, which was to be discharged by the payment of the three notes secured in the deed of trust, amounting to one thousand and four hundred dollars, and the amount of the O. W. S. Co. claim, represented by three notes, of two hundred and twenty-four dollars and fifty-three cents each, at one, two and three years, made by M., payable to the order of A. and B., and indorsed by them, and which were delivered to the O. W. S. Co. for its debt. A few days thereafter W., L. & Co. brought their suit against M., A., and B. to set aside said deed of trust and agreement of sale between M. and A. and B.; alleging that said sale and delivery of the three notes to the O. W. S. Co. for its debt gave it an illegal preference, to the exclusion and prejudice of other creditors of M. *Held*, that the O. W. S. Co., having no knowledge or notice of the sale from M. to A. and B., the indorsers, at the time it received the notes, had the right to hold the indorsers for the payment thereof in satisfaction of its debt, and the same was not an illegal preference in its favor, under section 2, chapter 74, Code. (p. 464).

Appeal from Circuit Court, Jackson County.

Bill by J. L. Armstrong and E. W. Brown against the

Oil-Well Supply Company and others. Decree for defend-
ants, and plaintiffs appeal.

*Affirmed.*

WM. A. PARSONS and R. F. FLEMING, for appellants.

MERRICK & SMITH, for appellees.

McWHORTER, PRESIDENT :·

On the 18th of July, 1891, E. R. McGugin conveyed his
stock of hardware, stoves and tinware in his store at
Ravenswood, Jackson County, to J. L. Armstrong, trustee,
to secure and save harmless E. W. Brown as indorser on
three negotiable notes of said McGugin, for five hundred
dollars each, and renewals thereof, or of any part of same.
On the 18th day of August, 1891, the Oil-Well Supply Com-
pany, a corporation, creditor of said McGugin to the
amount of six hundred and seventy-three dollars and fifty-
nine cents, filed its bill in the circuit court of Jackson
County against said McGugin, Armstrong, trustee, and E.
W. Brown; attacking said deed of trust as fraudulent,—
giving unlawful preferences. An injunction was granted,
restraining the trustee from disposing of the goods, and
appointing a receiver thereof. On the 20th of August,
1891, a motion was heard in chambers before the judge of
said court (plaintiff, Oil-Well Supply Company, being pres-
ent by its agent, L. P. Hill, and also by counsel); and no
objection being made, or reasons offered why said motion
should not be allowed, the order appointing the receiver
was rescinded, the injunction dissolved, and the bill dis-
missed, at plaintiffs' costs (docket fee being waived), and
McGugin put in possession of his property. On the 22d
of August three negotiable notes, at one, two, and three
years, respectively, for two hundred and twenty-four dol-
lars and fifty-three cents each, being dated August 20, 1891,
aggregating six hundred and seventy-three dollars and
fifty-nine cents, the amount of plaintiffs' claim, were made
by E. R. McGugin, payable to J. L. Armstrong and E. W.
Brown, and by them indorsed, and by McGugin delivered
to the Oil-Well Supply Company. On the 1st of Septem-
ber, 1891, C. D. Merrick, of the law firm of Merrick &
Smith, went to Jackson court house with a bill in chancery

·on behalf of Wolf, Lane & Co., creditors of said McGugin, prepared by said firm, and verified by the oath of Levin Smith, one of the firm, similar to the bill which had been filed by the Oil-Well Supply Company for the purpose of setting aside said deed of trust, enjoining the disposition ·of the goods by the parties, and appointing a special receiver in the cause. On arriving at the court house he learned for the first time that McGugin had sold the stock ·of goods to Armstrong and Brown, when he prepared another bill for Wolf, Lane & Co., for the purpose of enjoining McGugin, Brown, and Armstrong from selling, disposing of, or controlling the said goods, for setting aside preferences, and for the appointment of a special receiver, and applying the proceeds of the goods to the debts of McGugin, *pro rata.* The injunction was granted, and the receiver appointed. The cause was heard on December 24, 1891, on motion to dissolve the injunction and discharge the receiver, which motion prevailed, and Wolf, Lane & Co. appealed to this Court from the decree. The ·decree of the circuit court was affirmed, the bill not being dismissed, and the cause was remanded for further proceedings for the purpose of ascertaining "all debts of McGugin and applying the sum which Armstrong and Brown agreed to pay *pro rata* among them. They seem to have paid two of the notes, but they must be held for the whole sum for ratable distribution, charging the creditor who received the same to reimburse them, beyond their proper share, if they have been paid beyond it." The notes here referred to as two of them being paid are the three notes of McGugin, for two hundred and twenty-four dollars and fifty-three cents each, indorsed by Armstrong and Brown to the Oil-Well Supply Company. The opinion further ·says: "I do not see why the creditors holding the notes specified in said deed, including the Oil-Well Supply Company, were not made parties. The bill attacks their rights, and Armstrong and Brown were entitled to have them made parties. They must be yet made parties." This cause appears in 37 W. Va. 552, (16 S. E. 797). The plaintiffs, Wolf, Lane & Co., filed an amended bill, making the Oil-Well Supply Company and First National Bank of Parkersburg additional parties; and the cause was re-

ferred to Commissioner George J. Walker to ascertain and
report who were the creditors of said McGugin at the time
of the sale of his stock of merchandise to Armstrong and
Brown, the respective amounts due to said creditors, the
assets of said McGugin at said time, the sum which Arm-
strong and Brown agreed to pay for said stock of merchan-
dise, and the *pro rata* sum which each of said creditors
was and is entitled to receive out of the said assets, and out
of the amount which said Armstrong and Brown agreed to
pay for said merchandise, and any other pertinent matter,
etc. Said commissioner reported, and the cause was re-
committed to him to report fully the same matters re-
quired by the former order of reference, and further to
state an account between the defendants Armstrong and
Brown and the Oil-Well Supply Company, and other cred-
itors of McGugin named in the deed of sale of the stock
of goods of August 20, 1891, by McGugin to Armstrong
and Brown, showing the amounts paid by said Armstrong
and Brown, and by each of them, to the respective credi-
tors, when the same was so paid, and what sum of money,
if any, each of said respective creditors had received from
said Armstrong and Brown in excess of the *pro rata* share
of each of said creditors in the price of said stock of goods;
also any pertinent matter or account that might be required
to be specially stated and reported by any person in inter-
est; and on the 9th day of August, 1894, the cause was
heard, among other things, upon the report of Commis-
sioner Walker, "which report was filed in the papers of
this cause on the 25th day of July, 1894, and to which re-
port there are no exceptions, and from which report it ap-
pears that the assets of the said E. R. McGugin on the
20th day of August, 1891 (the date of the said sale thereof
to the said J. L. Armstrong and E. W. Brown), amounted
to two thousand and seventy-two dollars, and that the same
with interest thereon to the 1st day of August, 1894,
amounted to two thousand four hundred and forty-four
dollars; and it further appearing to the court from said re-
port that the following claims and demands in favor of the
various parties hereinafter named against the said E. R.
McGugin, and due and payable by him at the time of said
sale, have been filed, proved before, and allowed by said

commissioner, as follows:  *  *  *  J. L. Armstrong and E. W. Brown, two hundred and seventy-one dollars and seventy-eight cents; same and same, two hundred and seventy-one dollars and seventy-eight cents; same and same, two hundred and seventy-one dollars and seventy-eight cents;  *  *  *  the said several and respective sums being the aggregates of said claims on the 1st day of August, 1894, including interest to that date." To which report there were no exceptions, and the same was approved and confirmed, and Warren Miller, Esq., was appointed a special commissioner for the purpose of collecting and disbursing said funds to and among the several persons who had shown themselves entitled thereto according to their respective interests, as shown by said report of Commissioner Walker. It does not appear from said report of Commissioner Walker that defendant Oil-Well Supply Company presented or proved any claim before said commissioner, but the three notes held by it, and indorsed by Armstrong and Brown, were proved by and allowed to Armstrong and Brown, who also collected the *pro rata* share thereon from Special Commissioner Miller, or retained the same and receipted to Miller for it; said Armstrong and Brown having paid to the Oil-Well Supply Company the first and second of said notes. In 1895 said company brought its action of debt in said circuit court upon the note at three years against E. R. McGugin, J. L. Armstrong, and E. W. Brown. After appearance by the defendants, and the pleadings were made up in said action, Armstrong and Brown filed their bill in equity, alleging that the three notes represented a part of the consideration moving from them to McGugin for the purchase of the stock of goods, and there was no other consideration for same; that, McGugin being insolvent at the time, it made an illegal preference in favor of the Oil-Well Supply Company, as a creditor of said McGugin; that such preference was void, and the proceeds of the notes should be applied *pro rata* to all the debts of McGugin,—and praying that the Oil-Well Supply Company be restrained from further prosecuting said action of debt against them, and that the collection of the note sued on be perpetually enjoined as to plaintiffs, and that they have a decree of restitution and re-

covery against the defendant Oil-Well Supply Company for the full amount of excess paid by them to said Oil-Well Supply Company, and to the order of it, upon the said two notes, of two hundred and forty-four dollars and fifty-three cents each, at one and two years, over and above its *pro rata* share, which injunction was granted. The defendant Oil-Well Supply Company filed its demurrer, and answer setting up the circumstances under which it came in possession of said notes in consideration of the dissolving of its injunction and discharge of the receiver, the dismissal of its bill, and restoration of the property to McGugin. By stipulation of December 9, 1896, the original papers and record entries in the chancery suit of Wolf, Lane & Co. against McGugin and others, and in the action at law of the Oil-Well Supply Company against McGugin, Armstrong & Brown, which action was enjoined in this suit, and the three-years note of August 20, 1891, for two·hundred and twenty-four dollars and fifty-three cents, and certificate of protest, should be considered in evidence in this cause;· and by stipulation of February 25, 1897, certain affidavits and depositions therein enumerated were to be read and used in evidence upon the hearing of this cause, as if they were depositions regularly taken on notice. On the 26th day of November, 1897, the cause was heard upon all the papers and orders filed and made in the cause, and as provided in said stipulations, and upon motion to dissolve the injunction granted in the cause, of which motion due notice had been given, at which hearing the court sustained the motion, and dissolved the injunction. On March 13, 1898, plaintiffs tendered their amended and supplemental bill, which was filed, and moved the court to reinstate the injunction so dissolved, of which the court took time to consider. On the 4th day of March, 1898, defendant tendered its demurrer to the said amended bill, and, without waiving its demurrer, filed its answer. Plaintiffs joined in the demurrer, and replied generally to the answer.

The amended and supplemental bill alleged that said Oil-Well Supply Company at the time of the sale of the stock of goods by McGugin to plaintiffs, and at the time it received said three notes for its debt against said McGugin, had full knowledge and notice of said sale by McGugin to

them, and of the consideration for said notes, and that it took and received said notes with such full knowledge and notice of the unlawful preference thereby given to said company over other creditors, and that said company did thereby attempt to secure a preference and priority over the other creditors of McGugin in payment of the debt, knowing that the effect of said agreement and notes was to give it a preference and priority over the other creditors of said McGugin, and the same was to the prejudice of the other creditors of said McGugin; that the said notes, although upon their face negotiable, were and are void, because they, together with said agreement of sale, constituted a preference; that after the cause of Wolf, Lane & Co. against McGugin had been referred to a commissioner, as directed by the Supreme Court of Appeals in its opinion affirming the decree of the circuit court, such commissioner pursuant to such reference, reported all the debts against said McGugin that were proved before him, existing on said August 20, 1891. Among the debts so reported, plaintiffs were informed, the debt of the Oil-Well Supply Company was reported in their favor, for the reason that plaintiffs had prior thereto paid two of the three notes given therefor, and for the additional reason, as plaintiffs were informed, that the said opinion of the Supreme Court required said debt to be so reported, charging the creditors, if there were such, who received more than their *pro rata* share of said purchase money, with the excess received by such creditors beyond their *pro rata* share, - and prayer for the reinstatement and perpetuation of said injunction. The answer refers to its answer to the original bill, and makes it a part of this answer, and denies all or any notice or knowledge of the sale of the stock of goods by McGugin to Armstrong and Brown, or the consideration for said notes, at the time the notes were delivered to it, or that it had knowledge of the sale of said goods for some time after the transaction, but alleges that the notes were made, indorsed, and delivered to it in pursuance of the arrangement with McGugin, and in consideration of the extension of time, the dissolution of the injunction, the discharge of the receiver, dismissal of its suit, and the restoration of the property to the defendants. On the 3d of November,

1898, the cause was again heard, and the court overruled the demurrer to the amended and supplemental bill, and held that the plaintiffs were not entitled to the relief prayed for in their bill and amended and supplemental bill, and that the Oil-Well Supply Company was entitled to recover from plaintiffs the amount of the debt, and interest on the note dated August 20, 1891, payable three years after date, for two hundred and twenty-four dollars and fifty-three cents, made by E. R. McGugin, payable to said J. L. Armstrong and E. W. Brown, and by them indorsed, and that plaintiffs were not entitled to make defense thereof, as set up in their bill in that court, and enjoined plaintiffs from making any further defense in said action of debt under the special pleas filed by them in said action, and from making any defense or claim in said action based upon any of the matters set up or pleaded in plaintiffs' bill in this suit, and judgment for costs of the chancery suit, from which decree, as well as that of November 26, 1897, dissolving the injunction, plaintiffs appealed to this Court.

It is contended by appellants that the agreement of sale by McGugin to Armstrong and Brown, and the making of the notes by McGugin, and the indorsement thereof by Armstrong and Brown, covering the amount due the Oil-Well Supply Company, constituted together a fraudulent preference in favor of said company, which should be set aside. The Oil-Well Supply Company had commenced proceedings to enforce its claim against the estate of its debtor, who made a proposition to give it good indorsers, provided the creditor would give long time and release his property, which it agreed to do, and which was accordingly done, and the paper delivered shortly afterwards, with the indorsements proposed. There is evidence tending to show that the Oil-Well Supply Company may have known of the sale from McGugin to Armstrong and Brown, and that the notes were given as part of the consideration for the price of the goods, but the evidence of the only persons representing the company, and through whom only it could have known the fact, is distinct and positive that it and they knew nothing of it, and thought that McGugin was only carrying out his arrangement in good faith, by turning over to it the indorsed notes, which he had agreed to do in

consideration of the extension of time, the dismissal of the suit, and the release of the property to him: Mr. Armstrong, in his testimony, says he knew prior to the purchase by him and Mr. Brown that the property was in the hands of a receiver, and he did not suppose that Mr. Brown (?) could make sale until he would have his goods released (witness evidently meant McGugin, not Brown), and stated that McGugin told him prior to the time of purchase that the company had proposed to him (McGugin) that if he would give new paper, with good indorsers, they would give him good time on it. This was a valuable consideration, in which not only McGugin was interested, but both Armstrong and Brown. They desired the property released from the litigation which tied it up. The deed of trust secured the notes on which Brown was indorser, and Armstrong was the trustee in said trust. Brown was directly interested in having the suit dismissed, and the possession of the property restored. The indorsers both knew that the notes were to be used by McGugin in settling the claim of the Oil-Well Supply Company. It is said in *Williamson* v. *Cline*, 40 W. Va. at page 204, (20 S. E. 921): "If a pressing creditor agrees to forbear suit for even a day, it may enable the debtor to dispose of property, or get the help of a friend, or in some way save himself from ruin. And although the consideration be small, or even nominal, if it be appreciably valuable, it will be sufficient, and the court will not enter into the work of nicely weighing how small or valuable it may in fact have been. Parties have weighed these things themselves,' —and authorities there cited. "If a person has a right at law, his forbearance to institute legal proceedings to enforce or protect it, is a valuable consideration. Forbearance to go into bankruptcy, to take an appeal, to foreclose a mortgage, to file or enforce a lien, the abandonment of an attachment, the discontinuance of an ejectment, and the granting of a stay of execution are all valuable considerations." 6 Am. & Eng. Enc. Law (2d Ed.) 747, 748, and cases cited. The Oil-Well Supply Company knew nothing of the purchase by Armstrong and Brown. I only had the promise of McGugin to furnish it paper indorsed by them, which he did. In *Smith* v. *Moberly*, 10 B. Mon. 266,

52 Am. Dec. 543, it is held, "Secret agreement between
surety and principal cannot affect innocent parties into
whose hands the note falls." I think the case of *Merchant
& Co.* v. *Whitescarver*, 34 S. E. 813, decided by this Court
on December 9, 1899, is directly in point, where it is held
(syl., point 1): "A mercantile firm, although indebted to
insolvency, may sell its stock of merchandise to a disinter-
ested party, and receive his notes in payment therefor,
payable to its order, and assign one or more of said notes
in payment of a debt owed by it to a *bona fide* creditor;
and such transfer will not be void under section 2, chapter
74, Code, as amended by chapter 4, Acts 1895." The act
of 1895 does not materially change the last clause of said
section as it stands in the Code. And in *Carr* v. *Summer-
field*, 34 S. E. 804, decided by this Court November 28, 1899
(syl., point 4): "An assignment of an account, or an order
to one who owes the account to pay the amount due
thereon, or any specific part of it, to the payee in the or-
der, is such a transfer of an evidence of debt as will be pro-
tected by the last provision of section 2, chapter 74, Code."
If the insolvent could take the notes of the purchaser of
his stock, and transfer them in payment of a debt owed by
him to a *bona fide* creditor, surely he could apply his own
notes, with good indorsers, delivered to him by the indors-
ers to be used in the same way. These notes were taken
by the Oil-Well Supply Company, before maturity, for a
*bona fide* debt owed to it by McGugin, on which it had com-
menced proceedings to collect it. In consideration of the
dismissal of its suit, and the restoration of his property,
and the extension of time, McGugin furnished it the in-
dorsed notes to secure its debt. In *Bank* v. *Johns*, 22 W.
Va. 520, it is held that "a *bona fide* holder of negotiable pa-
per, who purchased it for value in the ordinary course of
business, before maturity, and without notice of facts
which impeach its validity between antecedent parties, has
title thereto unaffected by such facts, and may recover on
such note, although, as between such antecedent parties,
it is without legal validity." By indorsement, the indorser
promises that he will discharge the note according to its
tenor upon due presentment and notice, that the instru-
ment itself and all prior signatures are genuine, that he

has the right to transfer it, and that it is valid." 2 Am. &
Eng. Enc. Law (1st Ed.) 385, and cases cited. When
Armstrong and Brown indorsed the notes, they declared
the validity thereof, and that they were bound for their
payment. Appellants say that in *Wolf* v. *McGugin*, 37 W.
Va. 552, (16 S. E. 797), this Court held "that Armstrong
and Brown, upon said notes, can only be held for said com-
pany's *pro rata* share of said sum of two thousand and
seventy-two dollars," and that the Court could not, at the
time it so held, have overlooked the fact that these notes
were negotiable. The Court, in the opinion, say, "Arm-
strong and Brown must be held for the whole sum, for rat-
able distribution among all the creditors; charging the
creditor who had received any amount beyond his *pro rata*
share to reimburse Brown and Armstrong, if any had been
paid beyond it." It must be remembered that the Oil-
Well-Supply Company, the holder of the notes, had not up
to that time been a party to the suit; and the judge who
wrote the opinion, at page 564, 37 W. Va., and page 801, 16
S. E., says: "I do not see why the creditors holding the
notes specified in said deed, including the Oil-Well Supply
Company, were not made parties. The bill attacks their
rights, and Armstrong and Brown were entitled to have
them made parties. They must yet be made parties."
When the cause was remanded, said company was made a
party, and, defending its rights in the case, has shown it-
self entitled to the notes: leaving for *pro rata* distribution
among all the other creditors the said sum of two thous-
and four hundred and forty-four dollars, as of August 1,
1894, less the sum of said three notes, of two hundred and
twenty-four dollars and fifty-three cents each, including in-
terest to said August 1, 1894. The Oil-Well Supply Com-
pany could in no wise be affected by any action the court
could take in a proceeding to which it was not a party.

In Wolf, Lane & Co.'s bill, in setting forth the consider-
ation of the sale from McGugin to Armstrong and Brown,
among other things, it is alleged that the three notes, of
two hundred and twenty-four dollars and fifty-three cents
each, dated August 20, 1891, payable to the order of J. L.
Armstrong and E. W. Brown, in one, two, and three years
after date thereof, were indorsed by said Armstrong and

Brown to the Oil-Well Supply Company, and that by said notes and indorsement an illegal preference was given certain creditors, to the exclusion and prejudice of the other creditors, including plaintiffs,—thus making it appear on the face of the bill that the Oil-Well Supply Company was a proper party to the bill; and it also appears from the agreement of sale between McGugin and Armstrong and Brown for the stock of goods that the said three notes were indorsed over to the Oil-Well Supply Company by Armstrong and Brown, and that it was the holder of said notes for the amount of its debt, and the fact is referred to in the answer of Armstrong and Brown to Wolf, Lane & Co.'s bill; and yet the Oil-Well Supply Company is not asked to be made a party to the suit of Wolf, Lane & Co., which, if it had been done, would have prevented the present litigation. If it had been made a party, as it should have been, and the court had ascertained that the Oil-Well Supply Company was entitled to the notes, Armstrong and Brown would have only been required to pay in for *pro rata* distribution among the creditors the residue of the purchase money agreed to be paid by them for the goods, after deducting the amount of the notes.

It is insisted by appellee that Armstrong and Brown are estopped from making the defense they seek to make, because when the Wolf & Lane Co. cause was remanded to the circuit court, and the same was before Commissioner Walker on an order of reference to ascertain the debts against E. R. McGugin, and to ascertain the *pro rata* share of the several creditors, Armstrong and Brown proved before said commissioner all three of the notes indorsed by them to the Oil-Well Supply Company, for their own benefit, and the commissioner reported said three notes in favor of said Armstrong and Brown, which report was approved and confirmed, and the same decreed to them, and in their settlement with Miller, the special commissioner, appointed to collect and distribute the funds *pro rata* among the creditors entitled, they reserved to themselves the *pro rata* share accruing upon all three of said notes according to the decree. In this action they seemed to regard themselves as creditors of McGugin, merely as indorsers having paid and become liable for the

notes.   The Oil-Well Supply Company did not prove said notes before the commissioner for a *pro rata* share of the proceeds of the sale of McGugin's stock of goods, but they were proved by the indorsers, and the *pro rata* share .collected by them, and thus they acknowledge their liability as indorsers, and the validity of their indorsement and the holder looks to them only as indorsers; and having paid two of said notes to the holder or to its order and being liable as indorsers on the third note, Armstrong and Brown were entitled to prove such debt, and receive the *pro rata* share thereof, as they did.   For the reasons herein stated, the decree of the circuit court must be affirmed.

*Affirmed.*